Robin CRAWFORD, Plaintiff,

v.

Ronald B. HATCHER and H. Steven Sears, in their official capacities as deputy sheriffs for the Summers County Sheriff's Department, and individually; Sheriff James Blume, former Sheriff of Summers County, in his official capacity as Sheriff, and as an individual; Alonzo Williams, in his official capacity as jailer of the Summers County Jail, and as employee of the Summers County Sheriff's Department, and individually; Larry Keaton and B.B. Angel, as police officers for the City of Hinton and individually; Tommy E. Cobb, an individual, and also in his former capacity as a police officer of the City of Hinton; and the City of Hinton, a West Virginia incorporated municipality, Defendants.

Robin CRAWFORD, Plaintiff,

v.

Larry Dale KEATON, Defendant.

Civ. A. Nos. 5:89–1188, 5:92–0604.

United States District Court,
S.D. West Virginia.

Oct. 21, 1992.

**835**

George Daugherty, Elkview, W.Va., Dan Rupli, Bethesda, Md., for plaintiff.

J. Victor Flanagan, Charleston, W.Va., for Sears, Blume & Williams.

Jeffrey M. Wakefield, Charleston, W.Va., for Keaton, Angel & Cobb.

Gary Pullin, Charleston, W.Va., for City of Hinton.

## OPINION

FABER, District Judge.

The plaintiff, Robin Crawford, has brought these consolidated civil actions under 42 U.S.C. §§ 1981, 1983 and 1985 for alleged violations of his civil rights. He claims to have been unlawfully arrested and beaten in Hinton, West Virginia, on October 17 and 18, 1987, by Summers County, West Virginia Deputy Sheriffs and Hinton City Police Officers, in the presence and with the acquiescence of the Summers County jailer.

Plaintiff filed his original suit on October 16, 1989. At that time Larry Dale Keaton, one of the defendants, was incarcerated in a federal correctional institution. The plaintiff neglected to follow the mandate of West Virginia Code, § 28–5–36, which requires appointment of a committee for a prisoner before he can be sued, and served Keaton with process at FCI Petersburg, Virginia, which was beyond the territorial limits of effective service. Keaton moved to dismiss and plaintiff did not succeed in re-serving him until January 23, 1992, long after his release from prison. Due primarily to the transfer of the case between judges, Keaton's original motion to dismiss was not ruled upon.

Four days after Keaton was re-served with process, he filed, pursuant to Rules 4(j) and 12(b)(5) of the Federal Rules of Civil Procedure, a second motion to dismiss the complaint in the original suit on the ground that service was not made within 120 days after the complaint was filed. Crawford responded with a motion to enlarge the time for service under Rule 6(b)(2). This court granted Keaton's motion to dismiss and denied Crawford's motion for enlargement of time, holding that plaintiff's failure to effect service within the original 120–day time period was neither the result of excusable neglect nor justified by good cause.

Plaintiff then filed a separate civil action against Keaton alone and moved to consolidate it with the original case which was still pending against the other defendants. On July 15, 1992, Keaton filed a motion to dismiss the new action, asserting that the claim is barred by the applicable two-year statute of limitations. The plaintiff argues that, although more than two years have passed since the events giving rise to his claim against Keaton, the savings statute at West Virginia Code, § 55–2–18, preserves his claim. That statute gives an additional year after dismissal to bring a new suit if the dismissal is not for a cause which can be pled in bar of a new action.[1]

This court granted the motion to consolidate and now considers Keaton's new motion to dismiss. Keaton argues that the savings statute does not apply for two reasons. First, there was never a suit filed in the original two-year period because no committee was appointed for Keaton as required by West Virginia Code § 28–5–33; and, second, the dismissal of the original suit is a voluntary dismissal which renders the savings statute inapplicable.

Keaton's argument that the original action was not begun in time is apparently based upon the language of West Virginia Code § 28–5–36, which mandates that "[n]o action or suit shall be instituted by or against such convict after he is incarcerated...." If a suit is not properly commenced against a duly appointed committee of the incarcerated defendant, Keaton ar-

---

**1.** In a section 1983 action, the federal court "borrows" the state statute of limitations and tolling statute.

gues, there simply is no suit. Keaton has cited no West Virginia authority to support this contention and, while scant, what authority there is does not appear to support his position.

Section 28–5–36 was construed in *Craigo v. Marshall,* 175 W.Va. 72, 331 S.E.2d 510 (1985). In that case, the trial court had held that an incarcerated convict could not sue as a plaintiff without appointment of a committee. The West Virginia Supreme Court reversed, holding that the incarcerated plaintiff could elect to forego the protection of the statute and sue in his own right. In *dicta,* the court volunteered the opinion that a suit could go forward against an incarcerated defendant as well if that defendant elected to waive expressly in writing the appointment of a committee. The court in *Craigo* also construed the statutory prohibition against "instituting" a suit to prohibit *maintaining* such suit. It therefore seems implicit in the decision that the court construed the statute to prohibit the continued maintenance of a lawsuit filed directly against an incarcerated convict unless the convict waived his right to have a committee appointed, and not to prohibit the filing of such a lawsuit in the first instance.

All the plaintiff had to do under Rule 3 of the Federal Rules of Civil Procedure to start a suit against Keaton within the two-year period of the applicable statute of limitations was file a complaint. Although he waited until almost midnight to do so, he beat the stroke of twelve. The underlying events forming the basis of the complaint allegedly took place on October 17 and 18, 1987—the complaint was filed on October 16, 1989. It makes no difference that the first, ineffective attempt to serve Keaton did not occur until February 8, 1990. The suit was born when the complaint was filed.

Since 1978, Rule 3 of the West Virginia Rules of Civil Procedure has, on this point, been identical to its federal counterpart. Prior to 1978, both in an earlier version of Rule 3 and in the days of common law pleading, West Virginia followed a different rule—issuance of a summons was nec-

essary to give life to a civil action. *See, e.g., Lawrence v. Winifrede Coal Co.,* 48 W.Va. 139, 143, 35 S.E. 925 (1900).

Because the rule was different prior to 1978, two cases cited by Keaton in support of his argument that the original action was not timely filed are distinguishable. In *Stevens v. Saunders,* 159 W.Va. 179, 220 S.E.2d 887 (1975), the first case cited by Keaton, plaintiffs filed their complaint in a timely manner but failed to post a required bond for costs until the period of limitations had passed. The court held that, since a summons could not issue until the bond was posted, the action had been commenced in an untimely manner. Keaton's second case, *Huggins v. Hospital Board of Monongalia County,* 165 W.Va. 557, 270 S.E.2d 160 (1980), was a wrongful death action in which the death had occurred on August 3, 1974. The complaint was filed on August 3, 1976, the last day for commencement of the action under the appropriate two-year statute of limitations. The summons, however, did not issue until August 9, 1976. The Supreme Court of West Virginia held the action to be untimely, pointing out that, although Rule 3 had been changed by the time it decided the appeal, the case was begun when Rule 3 of the West Virginia Rules of Civil Procedure required both the filing of a complaint and the issuance of a summons to commence a civil action.

Accordingly, the court holds that plaintiff's original civil action was begun against Keaton in a timely manner. That original action having been dismissed as to Keaton by this court, the court must now consider whether plaintiff's second civil action against Keaton is preserved by the West Virginia savings statute.

■ It can hardly be questioned that the law favors resolution of disputes on their merits. Competing principles, such as prompt resolution of disputes and judicial economy, must give way except in compelling cases. The West Virginia savings statute, West Virginia Code, § 55–2–18, is designed to further this goal. Moreover, the savings statute is to be liberally construed in order to effect its intended pur-

pose. Judge Brannon's opinion in the early case of *Ketterman v. Dry Fork R. Co.*, 48 W.Va. 606, 37 S.E. 683 (1900), makes this clear:

> The very object of the statute is to give further time for a second action when the first action is for any cause abortive, ineffectual for recovery. No matter what was the cause of the first action's failure, no matter how bad the writ, no matter whether you call it void or voidable, it is all sufficient to save the second action.

*Id.* at 609, 37 S.E. 683.

Shortly thereafter, the Supreme Court of Appeals of West Virginia reiterated the rule in *Tompkins v. Pacific Mutual Life Insurance Co.* 53 W.Va. 479, 44 S.E. 439 (1903), as follows:

> It is a highly remedial statute and ought to be liberally construed for the accomplishment of the purpose for which it was designed, namely, to save one who has brought his suit within the time limited by law, from loss of his right of action by reason of accident or inadvertence....

*Id.* at 484, 44 S.E. 439.

More recently, Chief Judge Haynesworth, speaking for the United States Court of Appeals for the Fourth Circuit in *Stare v. Pearcy*, 617 F.2d 43 (4th Cir.1980), affirmed the continuing vitality of the *Ketterman* and *Tompkins* cases and concluded:

> Thus we are not without guidance from the Supreme Court of West Virginia, which has told us that West Virginia's savings statute is to be liberally construed and has rejected a narrower reading of the statutes of other states.

*Id.* at 46.

■ While the savings statute itself does not directly address the issue, a line of cases has developed in which the West Virginia Supreme Court has held that a voluntary dismissal by plaintiff of his original action takes the case out of the protection of the savings statute. Relying on these cases, Keaton contends that because plaintiff's counsel neglected to have a committee appointed for Keaton under West

Virginia Code, § 28–5–36, and failed to serve him with valid process within 120 days of filing suit, dismissal of the original action was voluntary and, as a result, the savings statute does not apply.

The West Virginia cases span a long time period and there is some difficulty in determining which types of dismissal are considered "voluntary" and which are not. These cases which speak in terms of voluntary dismissals taking cases out of the savings statute sometimes use the word neglect interchangeably with the concept of voluntariness. However, in each case holding the savings statutes does not apply, there seems to be an element of willful abandonment of the case on plaintiff's part.

■ Therefore, in attempting to harmonize these decisions, this court has determined that "voluntary" dismissals should be confined to those cases in which the plaintiff has specifically or by implication abandoned his original action. That is not the case here; while plaintiff has in some respects been less than diligent, his lack of diligence never manifested, or even suggested, an intention to give up his original suit against Keaton.

In the case upon which Keaton principally relies to support his motion, and in other cases holding the savings statute does not apply, there is some indication that the plaintiff took voluntary action to give up on his original suit. In *Lawrence v. Winifrede Coal Co.*, 48 W.Va. 139, 35 S.E. 925 (1900), the plaintiff had a timely summons issued, but never filed his declaration (complaint) in the original action. In *McClung v. Tieche*, 126 W.Va. 575, 29 S.E.2d 250 (1944), the plaintiff openly announced that she did not intend to pursue her original action after failing to obtain valid service of process on defendant. Instead, she brought a new suit in a second county where defendant could be served, effectively abandoning her first suit. In *Gillespie v. Johnson*, 157 W.Va. 904, 209 S.E.2d 143 (1974), plaintiff did not contest a motion to dismiss his original suit, but simply responded to the motion by filing a new suit in a different court. In all three of these

cases, the second suit was brought subsequent to the running of the statute of limitations and the savings statute was held inapplicable.

Conversely, there are reported decisions of the West Virginia Supreme Court in which the savings statute was held to apply even though the plaintiff made a mistake or lacked diligence where there was no evidence of intent to abandon the original action. An example is *Employers Fire Insurance Co. v. Biser,* 161 W.Va. 493, 242 S.E.2d 708 (1978), where the Supreme Court held that the savings statute preserved a case dismissed below for plaintiff's failure to follow a local rule concerning the identification of parties to the lawsuit. In *Litten v. Peer,* 156 W.Va. 791, 197 S.E.2d 322 (1973), the trial court dismissed the case when the plaintiff failed to show up for trial and claimed he was ill. The trial court then gave the plaintiff an opportunity to show that his failure to appear was due to good cause, after which it let the dismissal stand. While not essential to its decision on appeal, the Supreme Court of West Virginia in an opinion by Judge Sprouse, indicated that the savings statute was applicable in such circumstances and would preserve the original suit.

Moreover, there seems to be a valid practical rationale for holding that the savings statute prevents dismissal in instances of mistake, inadvertence or simple neglect, but not where the original suit has been abandoned. The person who suffers when a suit is barred by the statute of limitations is the plaintiff. Mistake, inadvertence and neglect are more likely to be the fault of counsel than of the party. Conversely, in most cases of abandonment of a cause of action, the client will have participated in that decision. Thus, refusing to apply the savings statute in the former case is to punish the party for the fault of his counsel, while in the latter case we simply hold him to the consequences of his own conscious decision.

In closing, the court would add that the equities of this case point strongly to keeping Keaton in it. If plaintiff's allegations turn out to be true, Keaton was one of the principal perpetrators of his injuries. Keaton apparently had actual notice of plaintiff's contentions against him as early as February 8, 1990, when plaintiff's first attempt to serve him was made. That service was not good as a matter of law, but it placed in Keaton's hands a copy of the complaint containing the allegations against him. Thereafter, Keaton, represented by the same counsel as some of his co-defendants, participated fully through such counsel in lengthy discovery and other pretrial proceedings. Under such circumstances Keaton can hardly be prejudiced by the court's decision to require him to go to trial.

An order denying the motion to dismiss will be entered in accordance with this opinion.