475 S.E.2d 149

**PERSONNEL TEMPORARY SERVICES,
A DIVISION OF PERSONNEL, INC.,**
Appellant,

v.

**WEST VIRGINIA DIVISION OF LABOR
CONTRACTOR LICENSING
BOARD, Appellee.**

No. 23268.

Supreme Court of Appeals of
West Virginia.

Submitted April 23, 1996.

Decided July 17, 1996.

Elgine Heceta McArdle, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Daynus Jividen, Senior Assistant Attorney General, Charleston, for Appellee.

RECHT, Justice:

Personnel Temporary Services appeals an order of the Circuit Court of Ohio County entered June 27, 1995 finding Personnel Temporary Services to be a "contractor," as defined in the West Virginia Contractor Licensing Act, W. Va.Code 21–11–1 to –19

(1991). On appeal, Personnel Temporary Services maintains that it is not a "contractor" because, although it retained payroll functions for the temporary laborers it referred to a contractor, it had no supervisory control over these laborers and never involved itself in the contracting activity. Based on the clear and unambiguous language defining a "contractor" found in W. Va.Code 21–11–3(c)(1991), we find that Personnel Temporary Services is a "contractor" under the West Virginia Contractor Licensing Act and, therefore, affirm the decision of the circuit court.

## I.

### FACTS

Personnel Temporary Services (hereinafter "PTS"), is an employment agency engaged in the business of providing temporary laborers to businesses, including construction companies. In October 1994, PTS, at the request of West Virginia Industries, a subcontractor for Eilers Development Company, referred ten laborers to a construction site in Parkersburg, West Virginia, to perform demolition work on an Elby's restaurant, which would be replaced with a Blockbuster Video store. Both West Virginia Industries and Eilers Development Company have and operate under West Virginia Contractor Licenses. PTS did not exercise any supervisory powers once the laborers were on the construction site and was never involved in the construction activity; however, PTS was responsible for determining the hourly rate to be paid to and performing all payroll functions for the temporary laborers. West Virginia Industries paid PTS an hourly fee for each laborer provided.

On October 27, 1994, Robert Goff, a compliance officer for the West Virginia Division of Labor, visited the construction site and, after ascertaining that PTS lacked a West Virginia Contractor License,[1] issued a cease and desist order against PTS, prohibiting PTS from engaging in any contracting activities unless and until it acquired a valid West Virginia Contractor License.[2]

PTS filed a protest to the cease and desist order. On November 15, 1994, a hearing was held before the West Virginia Contractor Licensing Board, which resulted in the Board assessing a one thousand dollar ($1,000) fine against PTS and issuing a Notice of Penalty dated November 18, 1994.[3]

PTS appealed and a hearing examiner conducted an administrative hearing on December 14, 1994.[4] By order entered January 26, 1995, the hearing examiner affirmed the Board's decision finding PTS to be a contractor.

PTS then appealed to the Circuit Court of Ohio County, which by order entered June 27, 1995, affirmed the Board's decision finding that the Board's factual findings were not clearly wrong, and that the Board's order was not arbitrary or capricious. PTS then appealed to this Court.

---

1. W. Va.Code 21–11–6(a)(1991) requires a contractor license for any person acting as a contractor by providing:

    ... [N]o person shall engage in this state in any act as a contractor, as defined in this article, unless such person holds a license issued under the provisions of this article. No firm, partnership, corporation, association or other entity shall engage in contracting in this state unless an officer thereof holds a license issued pursuant to this article.

2. W. Va.Code 21–11–13(a) (1991) provides the following for violations of the Contractor Licensing Act:

    Upon a determination that a person is engaged in contracting business in the state without a valid license, the [Contractor Licensing Board] or [Labor] commissioner shall issue a cease and desist order requiring such person to immediately cease all operations in the state. The order shall be withdrawn upon issuance of a license to such person. After a hearing, the board may impose a penalty of not less than two hundred dollars nor more that one thousand dollars upon any person engaging in contracting business in the state without a valid license.

3. *See supra* note 2 for the penalty provisions of W. Va.Code 21–11–13(a)(1991).

4. W. Va.Code 21–11–13(e)(1991) provides for an administrative hearing by stating:

    The board shall, by regulation, provide for an administrative hearing before a penalty is levied, and for review of any final ruling issued pursuant to such hearing.

## II.

### DISCUSSION

The narrow issue presented by this case is whether a business entity that refers laborers to a properly licensed contractor for employment while retaining all payroll functions for the laborers referred is a contractor as defined under the West Virginia Contractor Licensing Act, W.Va.Code 21–11–1 to –19 (1991), and therefore, subject to the licensing requirements therein.

Because the issue on appeal requires an interpretation of the provisions of the West Virginia Contractor Licensing Act, we are presented with a purely legal question, which is subject to a *de novo* review. Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995). *See Hartley Marine Corp. v. Mierke*, 196 W. Va. 669, 673, 474 S.E.2d 599, 603 (1996).

The West Virginia Contractor Licensing Act broadly defines who is considered a contractor and therefore, subject to the Act's licensing requirements. The definition section of the Act, W. Va.Code 21–11–3(c)(1991), provides:

> "Contractor" means a person who in any capacity for compensation, other than as an employee of another, undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, structure or excavation associated with a project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, where the cost of the undertaking is one thousand dollars or more.

The pertinent legislative rule promulgated under the West Virginia Contractor Licensing Act, 28 C.S.R. 2 § 3.9 (1996), is consistent with the statutory definition of a contractor, and also adds, in pertinent part:

> Contractor or "contracting activity" also means and includes the furnishing of work, or both materials and work, for another (by a sole contractor, general contractor, prime contractor or subcontractor) in fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, capital improvement or development of real property. . . . The terms "contractor" and "contracting" are synonymous.

In this case, the activities of PTS fall within the statutory definition of a contractor because PTS supplied laborers to perform work demolishing a building for another, the cost of which exceeded one thousand dollars. W. Va.Code 21–11–3(c) (1991) provides, in pertinent part, that a " '[c]ontractor' means a person who in any capacity . . . offers to undertake . . . to . . . demolish any building . . . associated with a project . . . or works in conjunction therewith, where the cost of the undertaking is one thousand dollars or more." The legislative rule, 28 C.S.R. 2 § 3.9, provides, in pertinent part, that a "[c]ontractor . . . means and includes the furnishing of work . . . in fulfillment of a contract for the . . . alteration, capital improvement or development of real property. . . ."

Our determination of the inclusive nature of the definition of a contractor is also shown by the nine narrow exceptions to the definition provided in W. Va.Code 21–11–6(c)(1991).[5] We find none of these narrow

---

5. W. Va.Code 21–11–6(c) (1991) provides the following exceptions:

(c) Except as otherwise provided in this code, the following are exempt from licensure:

(1) Work done exclusively by employees of the United States government, the state of West Virginia, a county, municipality or municipal corporation, and any governmental subdivision or agency thereof;

(2) The sale or installation of a finished product, material or article or merchandise which is not actually fabricated into and does not become a permanent fixed part of the structure;

(3) Work performed personally by an owner or lessee of real property on property the primary use of which is for agricultural or farming enterprise;

(4) A material supplier who renders advice concerning use of products sold and who does

exceptions applies in this case because PTS did not: (1) work for the government (*see* subsection (1) of W. Va.Code 21–11–6(c)(1991)); (2) furnish a product that is not a permanent fixed part of the structure (*see* subsection (2)); (3) personally perform agricultural work (*see* subsection (3)); (4) furnish materials (*see* subsection (4)); (5) work as a regulated public utility (see subsection (5)); (6) perform emergency repair work on equipment (see subsection (6)); (7) perform work as "an employer's regular employees" (see subsection (7)); (8) personally perform work on property it owns (see subsection (8)); or (9) prepare construction plans (see subsection (9)).

■ Our traditional rule of statutory construction is stated in Syllabus Point 1 of *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield,* 148 W.Va. 369, 135 S.E.2d 262 (1964), *overruled on other grounds, Booth v. Sims,* 193 W.Va. 323, 456 S.E.2d 167 (1995).

When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute.

*In accord* Syl. pt. 2, *Keen v. Maxey,* 193 W.Va. 423, 456 S.E.2d 550 (1995); Syl. pt. 1, *State ex rel. Board of Trustees v. City of Bluefield,* 153 W.Va. 210, 168 S.E.2d 525 (1969); Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia,* 190 W.Va. 416, 438 S.E.2d 596 (1993).

■ Given the clear and unambiguous language defining a contractor for the West Virginia Contractor Licensing Act, we find that an employment agency that refers temporary laborers for employment to licensed contractors, who supervise the laborers on the employment site, but retains all payroll functions, including the wage determinations for the temporary laborers, is a contractor under the West Virginia Contractor Licensing Act, W. Va.Code 21–11–1 to –19 (1991), and subject to the Act's licensing requirements.

In this case, we find that PTS, by providing labor to a licensed construction contractor, while retaining all payroll functions for the laborers so provided, is a contractor and therefore, subject to the licensing requirements of the W. Va.Code 21–11–1 to –19 (1991).

Our conclusion that PTS is a contractor is supported by our decision in *Koppers Co., Inc. v. Dailey,* 167 W.Va. 521, 280 S.E.2d 248 (1981)(interpreting liability for the business and occupation tax). In *Koppers,* we determined that a business which contracted to install electrostatic precipitators in a power plant should be taxed at a contracting rate. Syl. pt. 1 of *Koppers Co., Inc. v. Dailey* states:

Where a taxpayer is engaged in furnishing work or work and material for the construction, alteration, repair, decoration, or improvement of a new or existing building or structure or furnishing work or work and material for the alteration, improvement or development of real property, such taxpayer is engaged in the business of contracting and is liable for business and occupation tax at the contracting rate contained in W. Va.Code, 11–13–2e.

---

not provide construction or installation services;

(5) Work performed by a public utility company regulated by the West Virginia public service commission and its employees;

(6) Repair work contracted for by the owner of the equipment on an emergency basis in order to maintain or restore the operation of such equipment;

(7) Work performed by an employer's regular employees, for which the employees are paid regular wages and not a contract price, on business property owned or leased by the employer;

(8) Work personally performed on a structure by the owner or occupant thereof; and

(9) Work performed when the specifications for such work have been developed or approved by engineering personnel employed by the owner of a facility by registered professional engineers licensed pursuant to the laws of this state when the work to be performed because of its specialized nature or process cannot be reasonably or timely contracted for within the general area of the facility.

*See also* 28 C.S.R. 2 § 3.9 for exceptions to the definition of a contractor.

In *Koppers*, we concluded that the business and occupation tax statute, W. Va.Code 11–13–1 (1972), the language of which is also substantially similar to 28 C.S.R. 2 § 3.9 (1996),[6] was clear and unambiguous, and broad in its scope, so that we found it "difficult to ... envision a project which involves the furnishing or work and material that would not come within this definition." *Koppers*, 167 W.Va. at 525, 280 S.E.2d at 251. Similar to *Koppers*, the same broad construction of the definition of contractor or contracting in W. Va.Code 21–11–3(c) and 28 C.S.R. 2 § 3.9 (1996), is required by the clear and unambiguous statutory language.

Additional support for our statutory interpretation of the definition of a contractor is found in the Legislature's stated intent for the Contractor Licensing Act. W. Va.Code 21–11–2(1991) provides:

> It is hereby declared to be the policy of the state of West Virginia that all persons desiring to perform contracting work in this state be duly licensed to ensure capable and skilled craftsmanship utilized in construction projects in this state, both public and private, fair bidding practices between competing contractors through uniform compliance with the laws of this state, and protection of the public from unfair, unsafe and unscrupulous bidding and construction practices.

The stated purpose of the Contractor Licensing Act is to maintain an acceptable level of quality control within the industry by guarding against unfair trade practices, including "bidding practices," for the protection of the public.

In this case, PTS, based upon its status as a temporary agency or labor broker, contributes to the workers' compensation fund for its contracting activity at a rate which is substantially below the rate required for tra-ditional construction companies. Workers' compensation rates are in part determined by the risk assigned to the workers in a particular industry.[7] Thus if PTS is not a "contractor" under the Contractor Licensing Act, it would continue to enjoy an economic advantage of a lower workers' compensation rate than a traditional construction company. As a matter of public policy, we find such rate shifting to be inherently unfair: *unfair to the State*, which must to pay out benefits for an activity recognized to be more risky than traditional temporary agency services such as secretarial work (PTS's current the rate for contributions to the Workers' Compensation Fund); *unfair to competing subcontractors*, who must contribute to the fund at a rate commensurate with the risky nature of construction work; and *unfair to the public*, who ultimately bear the burden of unfair rate shifting and unfair bidding practices. Certainly, competing subcontractors cannot match a temporary agency's lower overhead resulting from the discounted rate it is assessed by the Workers' Compensation Fund.

Given the inclusive definition of "contractor" in the Contractor Licensing Act, we believe that the Legislature sought to guard against such unfair activity by requiring all businesses engaged in the construction business to acquire proper certification.

## III.

## CONCLUSION

Based on the foregoing discussion, we find that Personnel Temporary Services was a contractor within the meaning of the West Virginia Contractor Licensing Act when it supplied construction laborers while retaining all payroll functions and determinations for those laborers, and therefore, was subject

---

**6.** The definition of "contracting" in W. Va.Code 11–13–1 (1972), as relied upon by *Koppers,* has since been deleted by subsequent amendment. However, we find persuasive the Court's interpretation of "contracting," as defined in W. Va. Code 11–13–1 at that time.

**7.** *See* W. Va.Code 23–2–4(a)(1995), which provides, in pertinent part:

> The commissioner, in conjunction with the compensation programs performance council, is authorized to establish by rule a system for determining the classification and distribution into classes of employers subject to this chapter, a system for determining rates of premium taxes applicable to employers subject to this chapter, a system of multiple policy options with criteria for subscription thereto, and criteria for an annual employer's statement providing both benefits liability information and rate determination information.

to the licensing requirements of W. Va.Code 2–11–1 to –19 (1991).

For the above stated reasons, we affirm the decision of the Circuit Court of Ohio County.

Affirmed.