505 S.E.2d 701

Albert CABLE; Brenda Cable; David Cable; Roger Cable; Linda Cable, Singly, and as Legal Guardian and Next Friend of Brittany Cable, her infant child; Claude White; Chloe White; Brian Bullock; Angela Bullock; Patricia Bullock; Timothy Bullock; Mary Hall; Grady Hall; Joseph Hundley and Allene Hundley, Petitioners Below, Appellants,

v.

Tennis HATFIELD, Clerk of the Circuit Court of Mingo County, West Virginia, Respondent Below, Appellee,

and

Marrowbone Development Company, Intervenor Below, Appellee.

No. 24479.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided July 7, 1998.

Concurring and Dissenting Opinion of Justice Starcher July 16, 1998.

Steven L. Miller, Patrick L. Cottrell, Cross Lanes, for Appellants.

Richard J. Bolen, Robert L. Massie, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, Howard M. Persinger, Jr., Williamson, for Appellee Marrowbone Development Company.

DAVIS, Chief Justice:

Sixteen appellants appeal an order of the Circuit Court of Mingo County dismissing their petition for a writ of mandamus to require the circuit clerk to file a complaint submitted by mail. The clerk refused to file the complaint as the prospective plaintiffs had failed to tender a filing fee for each plaintiff, and because the complaint was not accompanied by a civil case information statement as required by Rule 3 of the West Virginia Rules of Civil Procedure. For the reasons explained in the body of this opinion, we conclude that when a circuit court clerk receives a complaint, which lists multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by the fee mandated by W.Va.Code § 59-1-11(a) (1996) (Repl.Vol.1997), the clerk must file the complaint. Furthermore, we determine that a circuit clerk is without authority to file a complaint that is not accompanied by a completed civil case information statement

as required by Rule 3 of the West Virginia Rules of Civil Procedure.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On or about July 14, 1993, a chemical substance was allegedly spilled into Laurel Creek in Mingo County, West Virginia, due to the acts of appellee Marrowbone Development Company,[1] thereby contaminating the drinking water supply in the area of Lenore, West Virginia. Nearly two years later, on July 12, 1995, attorney Steven L. Miller sent a letter to Tennis Hatfield, Clerk of the Circuit Court of Mingo County, West Virginia, by regular United States mail. Enclosed with the letter was a summons and complaint. The plaintiffs named on the complaint were the same sixteen individuals who make up the appellants to this appeal[2] [hereinafter collectively referred to as Cable]. The complaint named "MARROWBONE DEVELOPMENT COMPANY, d/b/a TRIAD MINING"[3] [hereinafter Marrowbone] as the defendant. Also enclosed with the letter, summons and complaint, was a check in the amount of seventy dollars, tendered as the filing fee,[4] and a check for five dollars payable to the West Virginia Secretary of State's Office for service of process on Marrowbone.[5] The complaint was not filed by the circuit clerk. Instead, the letter and other enclosures were returned to Cable's counsel with the following handwritten notation on the letter: "Judge Maynard does not allow multiple plaintiffs on law suits. You

---

**1.** According to appellee Marrowbone, "SMC Coal and Terminal Company was merged into Marrowbone Development Company on December 1, 1995, and the name of Marrowbone Development Company, the surviving corporation, was changed to SMC Coal and Terminal Company. Later[,] on December 12, 1995, the name was again changed to Mountaineer Coal Development Company, which is the same corporate entity as Marrowbone Development Company." For ease of reference and consistency with the final order of the circuit court, we will refer to the appellee as "Marrowbone."

**2.** On the petition for appeal and appellants' brief filed in this Court with respect to this case, counsel for Cable listed an additional appellant,

Jackie E. Dawson. As Ms. Dawson was not a party to the proceedings below, she is not a proper party to this appeal.

**3.** See *supra* note 1.

**4.** W.Va.Code § 59-1-11(a) (1990) (Cum.Supp. 1995), which was in effect during the period of time when counsel for Cable attempted to file the above-described complaint, required circuit court clerks to collect a seventy dollar filing fee to institute a civil action. The current fee is seventy-five dollars. See W.Va.Code § 59-1-11(a) (1996) (Repl.Vol.1997).

**5.** See W.Va.Code § 31-1-15 (1984) (Repl.Vol. 1996).

will need to file individual suits with a $70.00 filing fee for each. (Family) [sic] Also need a case information sheet to file. Thanks, Eve." The attorney for Cable received the returned correspondence on July 18, 1995, after the running of the applicable statute of limitations. Apparently, counsel for Cable made no second attempt to file the complaint with the requisite filing fee and civil case information statement, presumably since the statute of limitations had run.

On September 7, 1995, Cable filed a "PETITION FOR MANDAMUS RELIEF" seeking to compel Tennis Hatfield, Clerk of the Circuit Court of Mingo County, [hereinafter "Hatfield"], to file the aforementioned complaint *nunc pro tunc* as of the date the original complaint was *mailed* by counsel for Cable. Although Marrowbone was not named as a respondent to the mandamus action, it subsequently intervened in the matter upon agreement of all the parties. Thereafter, Marrowbone and Hatfield each filed demurrers to the petition for mandamus in accordance with W.Va.Code § 56–4–36 (1923) (Repl.Vol.1997). By order entered July 30, 1996, the Circuit Court of Mingo County dismissed the writ, naming several grounds for its dismissal. First, the circuit court noted that W. Va.Code § 53–1–3 (1933) (Repl.Vol.1994) requires that an application for writ of mandamus be on verified petition. Because the requisite verification was submitted on behalf of only one of the sixteen petitioners,[6] the court found that it lacked jurisdiction to consider the application with respect to the remaining fifteen petitioners.

Citing *Duncan v. Tucker County Bd. of Educ.*, 149 W.Va. 285, 140 S.E.2d 613 (1965).

The court further concluded that the writ of mandamus should not issue with respect to the one verified application before it. The court reasoned that because the plaintiffs in the underlying action failed to tender the proper filing fee and include a civil case information statement as required by W.Va. R.Civ.P. Rule 3, "the Petitioners [did] not have a clear legal right to the relief sought and there was no corresponding legal duty on the part of the Circuit Clerk to file the proposed Complaint." Moreover, the circuit court explained that because the Circuit Clerk's office refused the complaint and returned it unfiled, there was no record indicating the date the complaint was actually received. Thus, the court was unable to issue a writ of mandamus as it could not confirm that the complaint was, in fact, received within the statute of limitations.

Additionally, the court opined that it would be improper to file the pleading *nunc pro tunc*, as the authority submitted by the petitioners supported the court's authority to enter an order *nunc pro tunc*. In the absence of authority permitting the court to allow the filing of a pleading *nunc pro tunc*, the court declined to do so. Finally, the circuit court found that, contrary to Cable's argument, W.Va.Code § 55–2–18 (1985) (Repl.Vol.1994),[7] did not provide an equitable exception to the statute of limitations in this case. The court explained that W.Va.Code § 55–2–18 requires the timely commence-

---

6. The petition was initially filed without verification. However, after Marrowbone filed a demurrer pointing out that the petition was not verified, a single verification on behalf of Brenda Cable was submitted.

7. W.Va.Code § 55–2–18 (1985) (Repl.Vol.1994) states:

    If any action or suit, including an action for wrongful death, commenced within due time, in the name of or against one or more plaintiffs or defendants, abate as to one of them by the return of no inhabitant, or by his or her death or marriage, or if, in an action or suit, including an action for wrongful death, commenced within due time, judgment or decree (or other and further proceedings) for the plaintiffs should be arrested or reversed on a ground which does not preclude a new action or suit for the same cause, or if there be occasion to bring a new action or suit by reason of such cause having been dismissed for want of security for costs, or by reason of any other cause which could not be plead in bar of an action or suit, or of the loss or destruction of any of the papers or records in a former action or suit which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, dismissal or other cause, or after such arrest or reversal of judgment or decree, or such loss or destruction, but not after. The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eighty-two.

ment of an action as a prerequisite to extending the statute of limitations after the action has been dismissed for reasons not going to the merits of the suit. Because this action was not timely filed, the court reasoned, W.Va.Code § 55–2–18 was not applicable. It is from this July 30, 1996, order that Cable appeals.

## II.

## STANDARD OF REVIEW

We are asked to review the circuit court's dismissal of Cable's petition for a writ of mandamus. We have repeatedly described the elements required for mandamus relief as follows:

> "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 1, *State ex rel. Billy Ray C. v. Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl. pt. 2, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995). In this appeal, the parties' arguments revolve around the first and second elements required for mandamus, which are a clear legal right in the petitioner and a legal duty on the part of the respondent. Furthermore, resolution of the issues presented in this particular case require us to apply the provisions of Rule 3 of the West Virginia Rules of Civil Procedure and W.Va. Code § 59–1–11(a) (1996) (Repl.Vol.1997).[8] There have been no factual issues raised in

this appeal. Thus, our review will be *de novo*. *See* Syl. pt. 1, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995) ("The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo."). *See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III.

## DISCUSSION

### A.

### Applicability of Demurrer to Petition for Mandamus

Before reaching the substantive issues raised by the parties, we take this opportunity to address the procedural requirements for challenging the legal sufficiency of a petition for a writ of mandamus. In the case *sub judice*, Marrowbone and Hatfield challenged the legal sufficiency of Cable's "PETITION FOR MANDAMUS RELIEF" by filing demurrers pursuant to W. Va.Code § 56–4–36 (1923) (Repl.Vol.1997). Although demurrer has been abolished by Rule 7(c) of the West Virginia Rules of Civil Procedure, demurrer was appropriate in this particular instance.

At the time of the proceedings in the lower court, the West Virginia Rules of Civil Procedure did not apply to extraordinary remedies, with the exception of three rules.[9] W.Va.R.Civ.P. Rule 81(a)(5). Therefore, demurrer was not abolished with regard to extraordinary remedies. However, in recent amendments to the Rules of Civil Procedure,

---

8. See *supra* note 4. Although W.Va.Code § 59–1–11(a) (1990) (Cum.Supp.1995) is the statute that was in effect at the relevant time, the portions of W.Va.Code § 59–1–11(a) we must interpret to resolve the present appeal remain substantively unchanged by the 1996 amendments, except that the dollar amounts of the relevant fees have been changed. Moreover, the 1996 version of § 59–1–11(a) includes subsection and subdivision designations, thus simplifying reference to a specific portion of the statute. Consequently, because our application of W.Va.Code § 59–1–11(a) is the same with regard to both the

1990 and 1996 versions of the code, and because we can more easily reference the specific portion of the statute by referencing the 1996 version, our discussion and subsequent holding will refer to the 1996 version of § 59–1–11(a).

9. W.Va.R.Civ.P. Rule 5(b) (explaining how service of pleadings and other papers is made); Rule 5(e) (defining "Filing with the court"); and Rule 80 (pertaining to transcripts or statements of evidence) did apply to extraordinary remedies at the time relevant to this appeal.

which became effective on April 6, 1998, Rule 81(a)(5) was repealed. Moreover, a new rule expressly stating that "[t]he West Virginia Rules of Civil Procedure govern the procedure for the application for, and issuance of, extraordinary writs" was adopted as part of the 1998 amendments. W.Va.R.Civ.P. Rule 71B(a). Consequently, under the current rules, demurrer is not available to challenge a petition for a writ of mandamus, or other extraordinary remedy. Rather, the appropriate method of challenging the legal sufficiency of a petition for an extraordinary writ is a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," a Rule 12(c) "[m]otion for judgment on the pleadings" or a Rule 56 motion for summary judgment. *Wilfong v. Wilfong,* 156 W.Va. 754, 197 S.E.2d 96 (1973). *See also Barker v. Traders Bank,* 152 W.Va. 774, 778, 166 S.E.2d 331, 334 (1969) (observing that Rules 12(b)(6), 12(c) and 56 of the West Virginia Rules of Civil Procedure are "closely related and together replace demurrers").

We therefore hold that, W.Va.Code § 56–4–36 (1923) (Repl.Vol.1997) is superseded by Rule 7(c) and Rule 71B(a) of the West Virginia Rules of Civil Procedure insofar as that statute relates to extraordinary remedies. Thus, demurrer is no longer available to challenge a petition for an extraordinary remedy. To be proper, a challenge to the legal sufficiency of a petition for an extraordinary remedy must be made in the form of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a Rule 12(c) motion for judgment on the pleadings, or a Rule 56 motion for summary judgment.

### B.

### *Multiple Filing Fees in Cases with Multiple Plaintiffs*

Cable argues that the circuit court erred in finding that the clerk of the circuit court properly refused to file Cable's complaint against Marrowbone. First, Cable contends that by refusing to file the complaint, the circuit clerk improperly exercised discretion not vested in him. Cable argues that it is widely settled that the clerk of a court does not have discretion to determine the sufficiency, validity or legal effect of documents lawfully presented to the clerk for filing.

Second, Cable contends that the proper filing fee was tendered, pursuant to W.Va. Code § 59–1–11(a) (1990) (Cum.Supp.1995).[10] Therefore, the court clerk had no justification for refusing to file the complaint. Cable acknowledges that several counties have imposed the requirement of separate filing fees in lawsuits involving multiple plaintiffs. However, he submits that those counties have published general orders or local rules providing notice of the requirement. He complains that Mingo County had no general order or published local rule proving notice of the filing fee requirement. Furthermore, Cable argues that the cause of action asserted by each of the sixteen plaintiffs is identical. Thus, the determination of whether the lawsuits should have been severed under this circumstance, Cable argues, was properly within the discretion of a judge, not a court clerk.

Marrowbone responds that the circuit clerk properly refused to file the complaint; therefore, the petition for writ of mandamus was properly dismissed.[11] Marrowbone notes that the first two elements required for the issuance of a writ of mandamus, a clear legal right in the petitioner to relief and a legal duty on the part of the respondent, are not present in this case. Marrowbone argues that the circuit clerk was justified in refusing to file the complaint because Cable failed to tender the proper filing fees, which, under W.Va.Code § 59–1–11(a), "shall be paid in advance."

Marrowbone also asserts that *Stevens v. Saunders,* 159 W.Va. 179, 220 S.E.2d 887 (1975), is similar to the case at bar. In *Stevens,* the necessary bond for service of process was not received by the circuit clerk until after the running of the statute of limi-

---

10. See *supra* notes 4 and 8.

11. Marrowbone notes that Cable's petition for writ of mandamus sought to compel the circuit clerk to stamp the complaint as filed *on the date it was mailed.* Now, however, Cable requests that the complaint be stamped with *the date it was received* by the circuit court.

tations.[12] In response to the defendant's motion to dismiss on the ground that the action was not commenced within the statute of limitations, the plaintiff argued that it was the duty of the circuit clerk to provide a proper bond and that the clerk's failure should not inure to the plaintiff's detriment. This Court rejected the plaintiff's argument, stating that a "plaintiff or his attorney bears the responsibility to see that an action is properly instituted and that bonds are properly filed."

Finally, Marrowbone contends that the circuit clerk did not pass on the validity or sufficiency of the complaint by refusing to file it when the proper filing fee was not paid and the West Virginia Rules of Civil Procedure were not followed. Marrowbone submits that a court clerk has the authority and discretion to reject documents for filing that do not comport with the applicable court rules relative to form. *Citing Bowman v. Eighth Judicial Dist. Court,* 102 Nev. 474, 728 P.2d 433 (1986); *Thompson v. Cortese,* 41 Pa.Commw. 174, 398 A.2d 1079 (1979).

■ We conclude the plain language of W. Va.Code § 59–1–11(a) (1996) (Repl.Vol.1997) requires the circuit clerk to file a complaint when the statutory filing fee has been tendered. We have repeatedly recognized that:

" 'Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed.' Syllabus Point 1, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syllabus Point 1 of *State v. Boatright,* 184 W.Va. 27, 399 S.E.2d 57 (1990).

Syl. pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. David L.,* 192 W.Va. 663, 453 S.E.2d 646 (1994). *See also* Syl. pt. 3, *Michael v. Marion County Bd. of Educ.,* 198 W.Va. 523, 482 S.E.2d 140 (1996) (" 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting

to the rules of interpretation.' Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)."); Syl. pt. 1, *Personnel Temp. Servs., a Div. of Personnel, Inc. v. West Virginia Div. of Labor Contractor Licensing Bd.,* 197 W.Va. 149, 475 S.E.2d 149 (1996) ("When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute." (internal quotations and citations omitted)).

West Virginia Code § 59–1–11(a) (1996) (Repl.Vol.1997) states:

The clerk of a circuit court shall charge and collect for services rendered as such clerk the following fees, and such fees shall be paid in advance by the parties for whom such services are to be rendered:

For instituting any civil action under the rules of civil procedure, ... seventy-five dollars: Provided, That the fee for instituting an action for divorce shall be one hundred five dollars.

This language clearly mandates that, when presented with a civil complaint in an action other than a divorce action, the clerk shall collect a filing fee specifically designated to be seventy-five dollars (previously seventy dollars).[13] This fee must be received by the clerk prior to instituting any civil action under the rules of civil procedure. Thus, before the circuit clerk can institute a civil action by filing the complaint, *see* Rule 3, W.Va.R.Civ.P. ("[a] civil action is commenced by filing a complaint with the court"),[14] the clerk must collect a fee expressly specified by the legislature to be seventy-five dollars. This statute makes no distinction regarding the number of plaintiffs joining a particular suit.

Our rules of civil procedure permit multiple plaintiffs to join in a single action, under the appropriate circumstances. *See* W.Va. R.Civ.P., Rule 20(a) ("All persons may join in

---

**12.** At the time of *Stevens v. Saunders,* 159 W.Va. 179, 220 S.E.2d 887 (1975), "issuance of a summons was necessary to give life to a civil action." *Crawford v. Hatcher,* 804 F.Supp. 834, 836 (1992) (citing *Lawrence v. Winifrede Coal Co.,* 48 W.Va. 139, 143, 35 S.E. 925, 927 (1900)). Currently, all that is required to commence a civil action is

the filing of a complaint. W.Va.R.Civ.P. Rule 3(a).

**13.** See *supra* note 4.

**14.** The quoted language is currently found in W.Va.R.Civ.P. Rule 3(a).

one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."). Increasingly, numerous parties will join in an action as authorized by Rule 20. The mass litigation [15] that can result imposes a significant burden, financial and otherwise, on circuit clerks' offices. However, the West Virginia Rules of Civil Procedure are silent with regard to the filing fee to be charged when multiple parties choose to join in one action.

■ Nevertheless, the parties to this appeal do not dispute the circuit court's authority to assess additional filing fees in multiple plaintiff cases. Indeed, we have previously stated:

Courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. In order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reasonably necessary for the performance of its responsibilities in the administration of justice. Although courts must be cautious not to reach beyond the power of the judicial branch, it is crucial for the judiciary to be able to invoke such power as is reasonably necessary to maintain itself as an independent and *equal* branch of our government.

Syl. pt. 3, *State ex rel. Lambert v. Stephens,* 200 W.Va. 802, 490 S.E.2d 891 (1997).

■ A circuit court's administrative powers, which are exercised through the circuit judge, or chief judge where there is more than one circuit judge, also derive from the West Virginia Constitution. W.Va. Const. Article VIII, § 6 ("Under the direction of the chief justice of the supreme court of appeals, the judge of the circuit court, or the chief judge thereof if there be more than one judge of the circuit court, shall be the administrative head of the circuit court and all magistrate courts in the circuit."). Furthermore, we have explained that the administrative powers of the circuit judge or chief judge exist to the extent that they are not contrary to explicit direction from this Court. *Rutledge v. Workman,* 175 W.Va. 375, 381, 332 S.E.2d 831, 836 (1985) ("At the county level, except to the extend that the circuit courts are given explicit direction by the Supreme Court of Appeals, the power to control the local affairs of the circuit is placed in the circuit judge or the chief circuit judge."). Consequently, we hold that a circuit judge or chief judge of a circuit with more than one judge, shall have the authority to enter an administrative order governing when separate filing fees are required and may require additional filing fees in multiple plaintiff cases until such time as a statewide rule governing filing fees in multiple plaintiff cases is promulgated. While we recognize the circuit court's authority to assess multiple filing fees for multiple plaintiffs, we do not believe this authority imposes a corresponding duty on the part of the circuit court clerk to reject an otherwise valid complaint where such additional filing fees are not initially tendered.

**15.** Mass litigation is defined as:
two or more civil actions pending in one or more circuit courts: (a) involving common questions of law or fact in mass accidents or single catastrophic events in which a number of people are injured; or (b) involving common questions of law or fact in "personal injury mass torts" allegedly incurred upon numerous claimants in connection with widely available or mass-marketed products and their manufacture, design, use, implantation, ingestion or exposure; or (c) involving common questions of law or fact in "property damage mass torts" allegedly incurred upon numerous claimants in connection with claims for replacement or repair of allegedly defective products, including those in which claimants seek compensation for the failure of the product to perform as intended with resulting damage to the product itself or other property, with or without personal injury overtones; or (d) involving common questions of law or fact in "economic loss" cases incurred by numerous claimants asserting defect claims similar to those in property damage circumstances which are in the nature of consumer fraud or warranty actions on a grand scale including allegations of the existence of a defect without actual product failure or injury.
Rule XIX(c), W.Va. T.C.R. for Trial Courts of Record.

■ This Court recently established a Mass Litigation Panel to, *inter alia,* "develop and implement case management and trial methodologies for mass litigation." *See* Rule XIX(b)(1), W.Va. T.C.R. for Trial Courts of Record. This panel became fully operational on July 1, 1998. Due to its recent commencement, the panel obviously has not yet had the opportunity to address issues such as the one presently before us. In the absence of the adoption of a relevant rule proposed by the mass litigation panel, our decision must be guided by W.Va.Code § 59–1–11(a). As explained above, W.Va.Code § 59–1–11(a) requires, in mandatory language, the circuit clerk to collect only seventy-five dollars prior to filing a complaint in a civil action other than an action for divorce. We therefore hold that when a circuit court clerk receives a complaint, which lists multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by the seventy-five dollar filing fee mandated by W.Va.Code § 59–1–11(a) (1996) (Repl.Vol. 1997), the clerk must file the complaint. Once such a complaint has been filed, the circuit judge to whom the case has been assigned must determine whether the requirements, if any, that have been administratively established by the chief judge of that circuit under Syllabus point 3 of this opinion, are met such that additional filing fees should be assessed.[16]

### C.

### *Civil Case Information Statement*

Although Cable's complaint against Marrowbone was accompanied by the proper initial filing fee, there was a defect in Cable's attempt to initiate the action that thwarted the circuit clerk's authority to file the complaint. Under Rule 3 of the West Virginia Rules of Civil Procedure, "[e]very complaint *shall* be accompanied by a completed civil case information statement in the form prescribed by the Supreme Court of Appeals." (Emphasis added).[17] This rule utilizes the term "shall," and thus is mandatory. *See, e.g., State ex rel. Kern v. Santucci,* 201 W.Va. 144, 146, 494 S.E.2d 911, 913 (1997) ("The use of the word 'shall' is usually considered to be a mandatory word in enactments such as Rule 18(b) [of the West Virginia Rules of Civil Procedure] and has generally been construed as depriving a party required to do something of discretion to do that act." (Citations omitted)).

■ Therefore, we hold that Rule 3 of the West Virginia Rules of Civil Procedure requires, in mandatory language, that a completed civil case information statement accompany a complaint submitted to the circuit clerk for filing. In the absence of a completed civil case information statement, the clerk is without authority to file the complaint.

We can locate nothing in the record of this case establishing that Cable complied with the mandatory requirement of Rule 3. Because he failed to submit a completed case information statement with his complaint, the complaint could not be filed. Consequently, Cable did not have a legal right to the relief he sought in his petition for mandamus before the circuit court. As Hatfield did not have a legal duty to perform the act sought to be compelled by Cable's petition for a writ of mandamus, and because Cable was not legally entitled to the relief sought, the court did not err in dismissing Cable's petition.

### D.

### *Exception to the Statute of Limitations*

■ Finally, Cable argues that W.Va.Code § 55–2–18 (1985) (Repl.Vol.1994) provides him with an equitable exception to the statute of limitations.[18] We find this argument

---

**16.** Observing Cable's complaint that he was without notice of the Mingo County Rule requiring multiple filing fees in cases with multiple plaintiffs, we note that this case demonstrates the need for uniform statewide local court rules in published form.

**17.** The quoted language is currently found in W.Va.R.Civ.P. Rule 3(b).

**18.** Cable also argues that a writ of mandamus may properly require a circuit clerk to file the previously submitted complaint *nunc pro tunc.* While Cable cites cases supporting the premise that an *order* can be entered *nunc pro tunc* to make a record of something previously done by a court without the entry of an order, *see McCoy v. Fisher,* 136 W.Va. 447, 67 S.E.2d 543 (1951), he provides no authority establishing that a *pleading*

to be without merit. W.Va.Code § 55–2–18 states:

> If any action or suit, including an action for wrongful death, *commenced within due time,* in the name of or against one or more plaintiffs or defendants, abate as to one of them by the return of no inhabitant, or by his or her death or marriage, or if, in an action or suit, including an action for wrongful death, *commenced within due time,* judgment or decree (or other and further proceedings) for the plaintiffs should be arrested or reversed on a ground which does not preclude a new action or suit for the same cause, or if there be occasion to bring a new action or suit by reason of such cause having been dismissed for want of security for costs, or by reason of any other cause which could not be plead in bar of an action or suit, or of the loss or destruction of any of the papers or records in a former action or suit which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, dismissal or other cause, or after such arrest or reversal of judgment or decree, or such loss or destruction, but not after. The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eighty-two.

(Emphasis added). By its own terms, this section of the code applies only when an action is timely commenced, and then subsequently dismissed for one of the contemplated reasons. *See, e.g., Taylor v. State Workmen's Comp. Comm'r,* 152 W.Va. 609, 613, 165 S.E.2d 613, 617 (1969) ("Code, 1931, 55–2–18, as construed by this Court, provides for a one-year extension of the applicable statute of limitations for instituting a suit or action, *timely commenced* in a trial court, when such a suit or action is terminated during pendency of *timely litigation* upon a ground not going to the merits." (emphasis added)).[19] Pursuant to Rule 3 of the West Virginia Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court."[20] Cable's complaint was never filed. Therefore, the remedy provided in W.Va. Code § 55–2–18 is unavailable to him.

## IV.

## CONCLUSION

For the foregoing reasons, we find that Cable was not legally entitled to the mandamus relief he sought in the Circuit Court of Mingo County. Consequently, we affirm that court's order of July 30, 1996, dismissing Cable's petition.

Affirmed.

MAYNARD, J., disqualified.

O'BRIANT, Judge, sitting by special assignment.

STARCHER, Justice, concurring, in part, and dissenting, in part:

(Filed July 16, 1998)

My impression is that the circuit clerk didn't file plaintiffs' case in this matter, and sent the papers back, not because there was no civil case information sheet ("cover sheet")—but because there wasn't enough of a filing fee. We have ruled, and I agree, that the clerk was wrong about the fees.

With respect to the civil case information sheet, the clerk could have called the attorney and requested that a cover sheet be faxed, as we approved in *Plum v. Camden–Clark Foundation, Inc.,* 201 W.Va. 229, 496 S.E.2d 179 (1997).

So, the majority opinion holds that a picayune oversight by an attorney is adequate

---

may be filed *nunc pro tunc.* Moreover, because we conclude that the circuit court clerk was without authority to file Cable's complaint due to procedural deficiencies, we need not address this issue. Thus, we save it for a more factually appropriate case.

**19.** Although *Taylor v. State Workmen's Comp. Comm'r,* 152 W.Va. 609, 615, 165 S.E.2d 613, 617 (1969), discussed an older version of W.Va. Code § 55–2–18, the current version differs only in that it expressly includes within its terms causes of action for wrongful death.

**20.** See *supra* note 14.

**648**

grounds to deny 16 people their right to adjudication of their legal claims. I see no compelling reason for us to impose such a harsh result on innocent people.

What we are saying to the plaintiffs in the instant case, in essence, is: "tough luck." This is a phrase that we should avoid, in the judicial repertoire, when more equitable alternatives are available.

Moreover, even if the decision to bar the plaintiffs in the instant case from using the courts was a fair one, the rule adopted by the majority is too broad. What about *pro se* litigants who don't know about civil case information sheets? What if an attorney's secretary forgets to put the sheet in the envelope?

It would be better to explicitly indicate that appropriate equitable relief may be available in these sorts of circumstances, rather than to issue unnecessarily broad rules that may have draconian results for innocent people—that we will have to correct in future cases.

I therefore concur as to the fees issue and dissent as to the civil case information sheet issue.