2000 ND 21

**PRINCIPAL RESIDENTIAL MORTGAGE, INC., Plaintiff and Appellee,**

v.

**Zann NASH, Defendant and Appellant,**

**Montgomery Ward Credit and A.R. Audit Services, Inc., Defendants.**

No. 990132.

Supreme Court of North Dakota.

Feb. 22, 2000.

Glen R. Bruhschwein of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for plaintiff and appellee.

John J. Gosbee, Mandan, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Zann Nash appeals from an order denying her motion to vacate a foreclosure sale and for other relief. We vacate the order confirming the sale and remand for further proceedings.

## I

[¶ 2] On April 16, 1996, Principal Residential Mortgage, Inc., ("PRM") began an action to foreclose its mortgage on Nash's home. Nash fully participated in the foreclosure action. On March 11, 1997, a judgment was entered foreclosing the mortgage and directing the property be sold at public auction by the sheriff. Nash was served with notice of entry of the judgment and a copy of the judgment. Nash did not appeal the foreclosure judgment, but filed a Chapter 13 bankruptcy petition. She made some payments under the bankruptcy plan, but when she discontinued making payments, her bankruptcy case was dismissed in June 1998.

[¶ 3] The sheriff's sale was scheduled for August 18, 1998, and notice was published in the local newspaper in July and August of 1998. On August 17, 1998, PRM's counsel faxed and mailed to the sheriff a letter bidding $33,367.19 for the property on behalf of PRM. The letter also requested that if PRM was the high bidder, the sheriff file with the court several enclosed documents, including an affidavit of publication, notice of sale, report of sale, and a proposed order confirming the sale. PRM's bid was the only bid at the sale. The sheriff executed the report of sale and apparently submitted the documents to the judge. The judge signed PRM's proposed order confirming the sale on August 20, 1998. All of the above-mentioned documents were filed with the court on August 25, 1998.

[¶ 4] PRM did not provide separate mailed notice of the time and place of the sheriff's sale to Nash or her counsel, nor did PRM provide copies of the August 17 letter or enclosures. Nash claims she did not learn of the August 1998 sale of her home until January 1999. She then promptly filed a motion to vacate the foreclosure sale and for other relief. The district court denied Nash's motion, and she has appealed.

## II

[¶ 5] Nash asserts PRM was required under North Dakota law to provide her with prior notice of the time and place of the sheriff's sale. She asserts PRM's failure to provide such notice invalidates the sheriff's sale of her property.

## A

[¶ 6] Section 32–19–08, N.D.C.C., provides:

*Sales made by whom and where—Notice.* All sales of mortgaged premises under a judgment of foreclosure must be made in the county where the premises, or some part of them, are situated, by the sheriff of that county or the sheriff's deputy, or by some person appointed by the court for that purpose, upon the notice and in the manner prescribed by law for the sale of real property upon execution.

Section 28–23–04, N.D.C.C., provides:

*Sale of real property—Notice of sale—Contents.* Before any real property or interest therein taken on execution may be sold, the officer making the sale shall give public notice of the time and place of the sale:

1. If a newspaper is printed in the county where the real property to be sold is situated, the notice must be given by advertisement in a newspaper printed in the county once a week for three successive weeks, the last publication to be at least ten days prior to the making of the sale . . . .

[¶ 7] Nash concedes notice was published as required by statute. She argues, however, that she should have been served under N.D.R.Civ.P. 5(a) with copies

of the notice of sale, affidavit of publication, and report of sale [1] prior to the date of the sale. Rule 5 of the North Dakota Rules of Civil Procedure requires the personal service of "every written notice." Rule 5(a), N.D.R.Civ.P., provides in part:

> *Service–When Required.* Except as otherwise provided in these rules, every order required by its terms to be served, and, unless otherwise ordered by the court, every pleading subsequent to the original complaint, every paper relating to discovery required to be served upon a party, every written motion other than one which may be heard ex parte, every proposed order, order for judgment, decree, finding of fact and conclusion of law, *every paper filed with the clerk or submitted to the judge,* and *every written notice,* appearance, demand, offer of judgment, designation of record on appeal, *and similar paper must be served on each of the parties.*

(Emphasis added).

■ [¶ 8] The notice of sale given by the sheriff under N.D.C.C. § 28–23–04 is clearly a written notice, governed by our rules of civil procedure. The scope of the North Dakota Rules of Civil Procedure is found in Rule 1: "[t]hese rules govern the procedure in the district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81. They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." *See Reliance Ins. Co. v. Public Service Comm'n,* 250 N.W.2d 918, 921–22 (N.D.1977) (holding the North Dakota Rules of Civil Procedure, including Rules 81 and 5(a), apply to administrative proceedings because there is no inconsistency between the statutes and the rules). *See also Leek v. American Express Property Cas.,* 591 N.W.2d 507, 510 (Minn.Ct. App.1999) (holding the rules of civil procedure apply to a district court's review of an arbitration award); *Cable v. Hatfield,* 202 W.Va. 638, 505 S.E.2d 701 (1998) (holding the rules of civil procedure apply to extraordinary writs); *Romero v. Star Markets, Ltd.,* 82 Hawai'i 405, 922 P.2d 1018, 1024–25 (Haw.App.1996) (holding the rules of civil procedure apply to workers' compensation cases proceeding in circuit courts).

■ [¶ 9] Rule 5, N.D.R.Civ.P., provides for the service of documents that are not process. *Matter of Estate of Bieber,* 256 N.W.2d 879, 881 (N.D.1977). There is no requirement the notice must be filed with the clerk or submitted to the judge for the obligation of personal service to attach. This is illustrated, for example, by the fact an offer of judgment is required to be personally served under N.D.R.Civ.P. 5 even though filing or submission to the judge would be improper except under certain circumstances. *See* N.D.R.Civ.P. 68.

[¶ 10] Ohio, which has a statute, Ohio Rev.Code Ann. § 2329.26, that parallels our N.D.C.C. § 28–23–04 (requiring notice by publication of the time and place of an execution sale be given before the real property is sold), and a rule, Ohio R.Civ.P. 5(a), which parallels our N.D.R.Civ.P. 5(a) (providing "every written notice" shall be served upon the parties), has ruled due process requires a party with an interest in a foreclosure be given actual notice by mail when that party's address "is known or easily ascertainable." *See Central Trust Co. v. Jensen,* 67 Ohio St.3d 140, 616 N.E.2d 873, 875–76 (1993). *See also Federal Deposit Ins. Corp. v. Duerksen,* 810 P.2d 1308, 1310 (Okla.App.1991) (citing *Cate v. Archon Oil Co.,* 695 P.2d 1352 (Okla.1985)).

■ [¶ 11] There are important reasons to give notice of a sheriff's sale to both the public and the debtor. "The legislative

---

1. Nash also asserts on appeal that PRM should have served the special execution, which was filed with the district court on July 1, 1998. In Nash's brief on the motion to vacate, however, Nash's counsel admitted he was advised by telephone on July 9, 1998, that the special execution had been filed with the court.

purpose in requiring the publication of such a notice evidently was to attract the attention of those persons who would be likely to become prospective bidders at the sale ... to protect the rights of the interested persons by securing competitive bids at the sale." *Bailey v. Hendrickson*, 25 N.D. 500, 143 N.W. 134, 142 (1913) (Fisk, J., dissenting); *see Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–99, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *State v. Sloan*, 134 Fla. 632, 184 So. 128 (1938).

[¶ 12] A homeowner such as Nash has different, yet extremely important, interests in receiving personal notice of a foreclosure sale. Given proper notice of the time and place of the sale, Nash would have been able to attend the sale to ascertain the sale was being properly conducted according to the statutory requirements. *See* N.D.C.C. §§ 28–23–05, 28–23–07, and 28–23–08. Further, Nash would have been able to attend the sale and bid on the property herself, had she so desired.

[¶ 13] PRM incorrectly argues N.D.R.Civ.P. 81 would preclude application of Rule 5 here. Under Rule 81, N.D.R.Civ.P., special statutory proceedings "are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules." In *Tormaschy v. Tormaschy*, we said "silence is not an inconsistency." 1997 ND 2, ¶ 14, 559 N.W.2d 813. In that quiet title action, we held the defendant's answer must specifically plead waiver as required by N.D.R.Civ.P. 8(c) even though quieting title is a special proceeding under Rule 81, and the N.D.C.C.

§ 32–17–09 provisions relating to the quiet title answers do not require specific pleading of waiver. *Id.* at ¶¶ 12–17. As we said, "We will not interpret Rule 81 to remove all principles of due 'process and equity." *Id.* at ¶ 15.[2]

## B

■ [¶ 14] Nash argues PRM was required by N.D.R.Civ.P. 5(a) to serve her with a copy of the proposed order confirming the sale.

[¶ 15] Rule 5(a) specifically requires service of "every proposed order" upon opposing parties who have appeared in the action. A proposed order confirming the sale calls upon the court to exercise its discretion and perform judicial acts. Section 28–23–13, N.D.C.C., requires the court to "carefully examine[ ] the proceedings" of the sheriff, and determine whether the sale has been legally performed and "made in all respects in conformity to the provisions of this chapter." The court is also required to determine application of the proceeds of the sale and order disposition of any surplus. *See* N.D.C.C. § 32–19–10.

■ [¶ 16] In a mortgage foreclosure that has not resulted in a default judgment, Rule 5(a) clearly requires service of the proposed order confirming the sale, with a concomitant opportunity to be heard upon the propriety of the sale and proposed disposition of the proceeds. In this case, a proposed Order Confirming Sale on Foreclosure was prepared by PRM's counsel and sent to the sheriff with a request that it be forwarded to the court with the Report of Sale. Where, however,

---

**2.** In interpreting the federal rule and other states' similar rules, some courts have concluded a notice of a foreclosure sale is not encompassed within the "written notice" required to be served under the rule. *See United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843, 848–49 (10th Cir.1986); *Bank of Baker v. Mikelson Land Co.*, 979 P.2d 180, 183–84 (Mont.1999); *Production Credit Ass'n v. Williamson*, 107 N.M. 212, 755 P.2d 56, 57 (N.M.1988). However, there are several differences underlying these cases. Our rules analysis is based on the interrelationship of Rules 5 and 81. The federal rules do not contain our "inconsistent or in conflict" language. New Mexico rules provide sheriff's sales "shall be conducted in the manner provided by law." N.M.R.Civ.P. 1–065.1(J). The Montana rules appear similar to ours, but the Montana Supreme Court's analysis is inconsistent with ours in *Tormaschy*, 1997 ND 2, ¶ 14, 559 N.W.2d 813, and is contrary to the plain words of the rule.

an opposing party has appeared in the action, this method would be insufficient to satisfy the service requirements of Rule 5(a). Counsel is required to serve the proposed order at the time it is filed with the court.

## C

■ [¶ 17] Because PRM did not provide separate mailed notice to Nash or her counsel regarding the time and place of the sheriff's sale even though she was actively involved in the foreclosure process, and because PRM did not serve her with a copy of the proposed order confirming the sale, we therefore vacate the order confirming the sheriff's sale and remand for further proceedings consistent with this opinion.

## III

[¶ 18] We will briefly address other issues raised by Nash which are likely to arise again upon remand.

## A

■ [¶ 19] Nash asserts she owed only $27,240.51 at the time of the sheriff's sale, far less than the $33,367.19 bid by PRM. Nash therefore claims she is entitled to the surplus. PRM asserts, and the district court concluded, there can be no surplus because PRM's bid was merely a "credit bid" and no actual money changed hands.

[¶ 20] Section 32–19–10, N.D.C.C., governs application of the proceeds from a foreclosure sale:

> *Application of proceeds.* The proceeds of every foreclosure sale must be applied to the discharge of the debt adjudged by the court to be due and of the costs, and if there is any surplus, it must be brought into court for the use of the defendant or of the person entitled thereto, subject to the order of the court.

[¶ 21] PRM argues there can never be a surplus when the judgment creditor submits a "credit bid":

The only bidder at the sale held on August 18, 1998 was the judgment creditor (Plaintiff/Appellee) PRM. No actual cash exchanged hands, except $65 paid to the Sheriff by PRM for the sale. Being the judgment creditor, PRM simply submitted a "credit bid" in the amount of principal, interest, costs and fees which, if paid by Nash or some third party would make PRM whole. This is typical of virtually all foreclosure sales. Nash seeks to convince the court that somehow new money was paid at the sale which allegedly PRM has wrongfully converted. This either shows an extremely gross misunderstanding of how a typical sheriff sale works or an attempt to create something out of thin air.

A creditor's bid at a foreclosure sale is nothing more than a calculation of the amount the debtor owes to pay off the loan. It generally includes principal, interest, costs and fees. It sets the price for which the debtor, or any other potential buyer may purchase the property (by outbidding the creditor/mortgage company). Because the property is almost always worth equal or less than the amount owed, neither the debtor nor other persons have any interest in bidding at the sale. The mortgage company obtains ownership of the property by virtue of its credit bid. That is exactly what happened here.

The district court reached a similar conclusion:

> The defendant argues that there was a cash surplus resulting from the sale that should have been paid to her. There was no surplus. The plaintiff's bid is an arbitrary number reflecting the balance owed plus costs and expenditures. No money changed hands, nor was it required to, therefore there is no surplus due the defendant.

■ [¶ 22] PRM cites no authority for its novel assertion that a judgment creditor's "credit bid" is different from any

other bid at a sheriff's sale and cannot result in a surplus. The amount of the creditor's bid has significant legal ramifications, particularly upon redemption rights. *See* N.D.C.C. § 28–24–02 (redemptioner may redeem by paying the purchase price plus costs and interest). If amounts not collectable through foreclosure proceedings were included in the bid of the judgment creditor and the debtor were forced to pay the bid amount to redeem, redemption rights which exist for the benefit of the mortgagor would be compromised. *First State Bank of New Rockford v. Anderson,* 452 N.W.2d 90, 92 (N.D.1990). Yet PRM asserted at oral argument it could bid a million dollars at the sheriff's sale and there still would be no surplus.

[¶ 23] PRM's suggestion the amount of its bid is inconsequential and can never result in a surplus would render the sheriff's sale a sham. Section 28–23–07, N.D.C.C., provides that "[a]ll sales of property under execution must be made at public auction to the highest bidder." When a creditor bids at a sheriff's sale, its bid is on the same footing as other bids. The creditor's bid is an offer to pay the specified amount for the property. If the creditor bids more than it is allowed to recover under the foreclosure judgment and sale provisions, there is a surplus. If there is no "real money" in the court's hands, the court can surely order the judgment creditor to tender the amount of its bid which exceeds the amount the creditor is entitled to recover from the proceeds of the sale.

[¶ 24] PRM's assertion the creditor's bid may contain "principal, interest, costs, and fees" goes beyond what is allowed by our statutory scheme. Section 32–19–10, N.D.C.C., provides that only "the debt adjudged by the court to be due and of the costs" may be applied to discharge of the debt, and anything above that amount is surplus. In our foreclosure statutes, "costs" are typically limited to "the costs of the action." *See* N.D.C.C. § 32–19–06. We therefore interpret N.D.C.C. § 32–19– 10 to allow the judgment creditor to recover from the sale proceeds only the amount of the debt and the costs of the action, including the costs of the judicial sale. If the bid exceeds those amounts, there is a surplus which must be disposed of under N.D.C.C. § 32–19–10.

### B

[¶ 25] In a related issue, Nash asserts the district court erroneously allowed PRM to include attorney fees in the "costs and fees" in its bid. The mortgage in this case included a provision purportedly allowing PRM to recover its attorney fees upon foreclosure of the mortgage. The district court did not specifically address whether attorney fees could be included in the "costs" recoverable under N.D.C.C. § 32–19–10, and there is a factual dispute whether attorney fees actually were included.

[¶ 26] In the absence of pre-emptive federal law which governs, provisions in mortgages allowing recovery of attorney fees are against public policy and are void. N.D.C.C. § 28–26–04. PRM asserts it was nevertheless entitled to include attorney fees in its bid because the bankruptcy court had set an amount of reasonable attorney fees for which Nash was liable. PRM asserts that decision is binding upon Nash under theories of res judicata and collateral estoppel.

[¶ 27] Federal courts have held that debtors may be liable for attorney fees in bankruptcy actions under 11 U.S.C. § 506(b), notwithstanding state statutes prohibiting collection of attorney fees. *See In re Schriock Construction, Inc.,* 104 F.3d 200, 201–02 (8th Cir.1997). The court in *Schriock,* at 201, stressed that "this case concerns the allowance of attorney's fees under federal law, not state law." A federal court's determination of appropriate costs and fees under federal law in a bankruptcy action is not controlling on the issue of proper costs under state law in a foreclosure action after the bankruptcy action has been dismissed. The principles of res

judicata and collateral estoppel do not apply under these circumstances.

[¶ 28] We conclude a judgment creditor is not entitled to collect attorney fees under a provision in the mortgage as part of the amount due or as costs under N.D.C.C. § 32–19–10. To the extent PRM included such attorney fees in its "credit bid," there is a surplus.

## IV

[¶ 29] We vacate the order confirming the sheriff's sale and remand for further proceedings consistent with this opinion.

[¶ 30] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, J., concur.

KAPSNER, Justice, concurring and dissenting.

[¶ 31] I concur with the majority opinion except to the extent it holds Rule 5, N.D.R.Civ.P., requires service of the notice before foreclosure sale in accordance with that rule prior to the sale. I would like to concur in that portion because, as the majority points out, the owner of the foreclosed property has important interests to protect. Pre-sale personal notice may give the owner a better opportunity to be aware of the time and place to appear to protect those interests. However, since personal notice is not constitutionally required under these circumstances, I believe compliance with the statutory notice provisions is sufficient. *See Endicott–Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 288–89, 45 S.Ct. 61, 69 L.Ed. 288 (1924); *Taylor v. Slick,* 178 F.3d 698, 703 (3rd Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 797, —— L.Ed.2d ——, 68 USLW 3312 (Jan. 10, 2000); *United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843, 848–49 (10th Cir.1986); *Production Credit Ass'n v. Williamson,* 107 N.M. 212, 755 P.2d 56, 58 (N.M.1988).

[¶ 32] Our statutes direct the sheriff to provide notice of a foreclosure sale through public advertisement of the time and place of the sale. The sheriff is not a party to the foreclosure suit. I do not believe Rule 5's reference to "every written notice" can be read so broadly as to include service of notices which are prepared outside the litigation by non-parties to the litigation. In this I agree with the analysis of the Montana Supreme Court in its recent consideration of Rules 81(c) and 5(a), M.R.Civ.P., which are similar to our rules similarly numbered.

[¶ 33] In *Bank of Baker v. Mikelson Land Co.,* 1999 MT 76, 979 P.2d 180, the Montana Supreme Court considered whether an owner (Mikelson) who had participated in a foreclosure proceeding received proper notice of the sale. Notice had been given publicly by the sheriff in accordance with the governing statute, but neither the owner nor the owner's attorney was served under Rule 5. The court held that Rule 5 service was not required:

> While Mikelson's argument relating to these rules is less than clear, it is clear that they do not—either standing alone or taken together—require service of the notice of the sale on Mikelson or Mikelson's counsel. Nothing in the statutes governing execution sales and notice thereof renders acts associated with execution sales acts in a district court civil proceeding, as contemplated by Rule 81(c), M.R.Civ.P. Similarly, the Rule 5(a), M.R.Civ.P., requirement that every written notice be served on all parties relates only to written notices within a district court civil proceeding. That requirement does not relate to execution sales, which are governed by the notice requirements contained in § 25–13–701, MCA, which—as discussed above—were met here.

*Id.* at ¶ 21. Accord: *United States v. New Mexico Landscaping, Inc.,* 785 F.2d at 848–49; *Production Credit Ass'n v. Williamson,* 755 P.2d at 57.

[¶ 34] I do not read *Tormaschy v. Tormaschy,* 1997 ND 2, 559 N.W.2d 813, to require a different result. In *Tormaschy* this Court examined Rule 81, N.D.R.Civ.

P., which provides: "Special statutory proceedings, whether or not listed in Table A, are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules."

[¶ 35] Appellants in *Tormaschy* argued that pleading waiver was unnecessary because Chapter 32–17, N.D.C.C., governing quiet title actions, did not require waiver to be specially pled. We rejected that argument, following federal courts in concluding "silence is not an inconsistency, for when an excepted statutory proceeding is silent on a certain procedural issue, the general rules of civil procedure become applicable." *Id.* at ¶ 14.

[¶ 36] Chapter 32–19, N.D.C.C., governing real estate mortgage foreclosures, is a special statutory proceeding under Rule 81 and it is not silent on the procedures for giving notice. Section 32–19–08 directs sales "upon the notice and in the manner prescribed by law for the sale of real property upon execution."

[¶ 37] Section 28–23–04, N.D.C.C., which prescribes the notice of sale in a foreclosure, was amended in 1989 to provide mailed notice prior to the sale to nonowner defendants whose names do not appear in the public notice. Mailed notice is not required to owners who are identified in the public notice of sale. This section requires the officer conducting the sale to give public notice. Since that officer is not a party to the foreclosure litigation, I do not read Rule 5 to cover the notice which the officer, by statute, is required to give.

[¶ 38] MARY MUEHLEN MARING, J., concurs.