2009 ND 207

**FIRST INTERNATIONAL BANK & TRUST, Plaintiff and Appellant**

v.

**D. Duane PETERSON, MID AM Group, LLC, James R. Bullis, Kevin L. Christianson, Richard R. Jordahl, Arlan H. Anderson, Greg Anderson, and Robert Green, Defendants and Appellees**

**Douglas H. Peterson, Defendant.**

**No. 20090214.**

Supreme Court of North Dakota.

Dec. 15, 2009.

Roger J. Minch (argued), Serkland Law Firm, Fargo, ND, for plaintiff and appellant.

James R. Bullis (argued), Montgomery Goff & Bullis PC, Fargo, ND, for defendants and appellees James R. Bullis, Kevin L. Christianson and Richard R. Jordahl.

Todd E. Zimmerman (argued) and Matthew A. Kipp, Dorsey & Whitney LLP, Fargo, ND, for defendants and appellees Arlan H. Anderson, Greg Anderson and Robert Green.

Paul A. Sortland, Sortland Law Office, Minneapolis, MN, for defendants and appellees MID AM Group, LLC and D. Duane Peterson.

VANDE WALLE, Chief Justice.

[¶ 1] First International Bank & Trust appealed from a judgment denying its motion for summary judgment, granting summary judgment for the guarantors, and dismissing the Bank's claims against each guarantor. The Bank argues the guaranties, by their terms, are enforceable notwithstanding the Bank's successful bid at the foreclosure sale for the full amount of the indebtedness, and the guarantors waived their right to argue that their guaranties were extinguished by the Bank's bid at the foreclosure sale, or should be estopped from doing so, because they did not respond to the Bank's letter. We affirm because the guarantors were discharged when the Bank satisfied the underlying debt by purchasing the property at the foreclosure sale for the full amount of the indebtedness, and the guarantors had no duty to respond to the Bank's letter.

I.

[¶ 2] Mid Am Group, LLC, borrowed money from the Bank to build condominiums. The Bank received guaranties from the appellees. Mid Am paid the guarantors for providing the guaranties. According to the guaranties, only "full payment and discharge of all indebtedness," would discharge the guarantors. The guaranties further state, "The liability of the Undersigned shall not be affected or impaired by ... any acceptance of collateral, security, guarantors, accommodation parties or sureties for any or all Indebtedness; ... any foreclosure or enforcement of any collateral security." The guarantors waived all defenses "except the defense of discharge by payment in full." The guarantors agreed to be liable "for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness." The guaranties also state:

Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives ... any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

[¶ 3] Mid Am defaulted on the loan. The Bank brought a foreclosure action against Mid Am and an action against the guarantors. The Bank obtained a judgment against Mid Am for $6,591,770.19. The Cass County Sheriff held a foreclosure sale. Prior to the sale, the Bank's attor-

ney sent a letter to the guarantors' attorneys indicating the Bank intended to make a bid for the full amount of the indebtedness at the foreclosure sale. The Bank explained it would consider the indebtedness to be paid in full and the guaranties discharged if a third party outbid the Bank. However, if the Bank was the highest bidder, the Bank reserved the right to attempt to collect on the guaranties. The Bank did not ask the guarantors to respond to the letter or state their position regarding the Bank's bidding strategy. The guarantors did not respond to the Bank's letter.

[¶ 4] At the foreclosure sale, after a third party bid six million dollars, the Bank bid the full amount of the indebtedness including interest and fees, totaling $7,325,313.08. The Bank's bid was the highest. The Sheriff's Report of Sale indicates no deficiency remained after the Bank's purchase of the property. The Bank's attorney acknowledged receipt of the money and its application to the judgment against Mid Am.

[¶ 5] The Bank subsequently moved for summary judgment against all the guarantors. The district court granted summary judgment to the guarantors and dismissed the Bank's complaint. *See* N.D.R.Civ.P. 56(c) ("Summary judgment, when appropriate, may be rendered against the moving party"). The district court reasoned the guaranties were discharged by the Bank's full payment of the underlying indebtedness at the foreclosure sale. The district court also concluded the guarantors neither waived their right to resist the Bank's complaint, nor did estoppel bar their defense. The district court explained the Bank was "fully aware of all of the circumstances and made the conscious choice to bid at the Sheriff's Sale." Finally, the guarantors did not voluntarily or intentionally relinquish any of their rights.

"They simply did not respond to the [Bank]'s letter, which they were not required to do."

## II.

[¶ 6] The Bank argues the guaranties, by their terms, are enforceable despite the foreclosure sale. The parties do not dispute the facts, only the interpretation of the guaranties. Interpretation of a contract is a question of law, and on appeal this Court independently examines and construes the contract "to determine if the district court erred in its interpretation of it." *General Electric Credit Corp. of Tenn. v. Larson*, 387 N.W.2d 734, 736 (N.D.1986) (citing *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192, 194 (N.D. 1986)). "If a written contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the terms of the contract and the parties' intent are questions of fact." *Doeden v. Stubstad*, 2008 ND 165, ¶ 14, 755 N.W.2d 859 (citing *Spagnolia v. Monasky*, 2003 ND 65, ¶ 10, 660 N.W.2d 223). Here, the parties do not argue the guaranties are ambiguous.

[¶ 7] A guaranty is "a promise to answer for the debt, default, or miscarriage of another person." N.D.C.C. § 22–01–01(2). This Court has previously explained the relationship between a mortgage and a guaranty:

The mortgage and individual guaranties existed only to insure payment of that debt. Although the mortgage and note are separate and independent obligations from the debt, their operation depend entirely on the existence of the debt. Once a debt secured by a mortgage is paid, the mortgage is satisfied, and upon payment of the underlying debt a guarant[y] is extinguished.

*First Fed. Sav. & Loan Ass'n v. Scherle,* 356 N.W.2d 894, 896 (N.D.1984) (internal citations omitted).

[¶ 8] This Court has previously decided cases in which lenders attempted to collect on guaranties after purchasing property at a foreclosure sale. In *Scherle,* the bank obtained personal guaranties on a debt secured by a mortgage. *Id.* at 895. When the debt became delinquent, the bank commenced an action against the guarantors and against the borrower. *Id.* The bank received a judgment of foreclosure against the borrower and purchased the property at a foreclosure sale for the full amount of the indebtedness. *Id.* The district court granted summary judgment to the guarantors and dismissed the bank's complaint, concluding the bank's purchase of the property satisfied the underlying debt. *Id.* at 895–96. We concluded the bank had voluntarily discharged the debt by converting the debt into property. *Id.* at 896. The guaranties were extinguished "[b]ecause one cannot guarantee payment on a nonexistent debt." *Id.*

[¶ 9] In *Principal Residential Mortgage, Inc. v. Nash,* 2000 ND 21, 606 N.W.2d 120, the lender foreclosed on the borrower's mortgage. *Nash,* at ¶ 2. The only bid at the foreclosure sale was the lender's, which was greater than the amount of the indebtedness. *Id.* at ¶¶ 3, 19. According to the foreclosure sale statute, "The proceeds of every foreclosure sale must be applied to the discharge of the debt adjudged by the court to be due and of the costs, and if there is any surplus, it must be brought into court for the use of the defendant or of the person entitled thereto, subject to the order of the court." *Id.* at ¶ 20 (quoting N.D.C.C. § 32–19–10). The lender asserted it did not have to pay any surplus to the borrower because its bid was a "credit bid" and no actual money changed hands. *Id.* at

¶ 19. This Court disagreed with the lender's "novel assertion." *Id.* at ¶ 22. Adoption of the lender's argument "would render the sheriff's sale a sham." *Id.* at ¶ 23. We explained:

> When a creditor bids at a sheriff's sale, its bid is on the same footing as other bids. The creditor's bid is an offer to pay the specified amount for the property. If the creditor bids more than it is allowed to recover under the foreclosure judgment and sale provisions, there is a surplus. If there is no "real money" in the court's hands, the court can surely order the judgment creditor to tender the amount of its bid which exceeds the amount the creditor is entitled to recover from the proceeds of the sale.

*Id.* The lender, thus, had to apply the surplus under N.D.C.C. § 32–19–10. *Id.* at ¶ 24.

[¶ 10] Here, the guarantors waived all defenses, except the defense of discharge by payment in full. The Bank entered the highest bid at the foreclosure sale, for the full amount of the indebtedness. If a third party had bid the full amount of the indebtedness at the foreclosure sale, the guarantors would have been discharged because the borrower's debt would have been paid in full. The same is true when the lender bids at the foreclosure sale. As we explained in *Nash,* the lender's bid is "on the same footing as other bids." *Nash,* 2000 ND 21, ¶ 23, 606 N.W.2d 120. The Bank's successful bid at the foreclosure sale paid the borrower's debt in full. According to the plain language of the guaranties, when the borrower's debt was paid in full the guarantors were discharged. In addition, this Court has previously explained, "[U]pon payment of the underlying debt a guarant[y] is extinguished." *Scherle,* 356 N.W.2d at 896. The waivers and exclusions in the guaranties may be applicable in other situations.

Here, however, the Bank's purchase of the property at the foreclosure sale paid the borrower's debt in full, and thus extinguished the guaranties. The district court did not err in its interpretation of the guaranties.

### III.

[¶ 11] The Bank also argues the guarantors waived their right to resist the Bank's efforts to collect on the guaranties, or are estopped from doing so, due to their failure to respond to its letter. The district court rejected this argument, concluding the guarantors "never made any voluntary or intentional relinquishment of any of their rights. They simply did not respond to the [Bank]'s letter, which they were not required to do."

[¶ 12] The district court granted summary judgment to the guarantors. Summary judgment "is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result." *Estate of Dionne*, 2009 ND 172, ¶ 8, 772 N.W.2d 891 (citing *Pear v. Grand Forks Motel Assocs.*, 553 N.W.2d 774, 778 (N.D.1996); *Lire, Inc. v. Bob's Pizza Inn Rest., Inc.*, 541 N.W.2d 432, 433 (N.D. 1995)). "Whether a district court properly grants summary judgment is a question of law that we review de novo on the record." *Id.* (citing *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869). Neither party disputes the material facts of this case, nor the inferences to be drawn from those facts.

### A.

### Waiver

[¶ 13] This Court has explained:

A finding of waiver is a finding of fact reviewed under the clearly erroneous standard. For a waiver to be effective, the waiver must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. The right, claim, privilege, or benefit must be one the party could have enjoyed, but for the waiver. Once the right is waived, the right or privilege is gone forever and cannot be recalled. A waiver cannot be extracted, recalled or expunged. A waiver can be made expressly or by conduct.

*Tormaschy v. Tormaschy*, 1997 ND 2, ¶ 19, 559 N.W.2d 813 (internal citations and quotations omitted). When there is no dispute as to the material facts, we determine whether the trial court properly granted summary judgment as a matter of law. *Burr v. Kulas*, 1997 ND 98, ¶ 8, 564 N.W.2d 631 (citing *Ertelt v. EMCASCO Ins. Co.*, 486 N.W.2d 233, 234 (N.D.1992)).

[¶ 14] In its letter, the Bank did not ask the guarantors to respond or inform the Bank of their positions regarding the Bank's bidding strategy for the foreclosure sale. The letter did not indicate the Bank would change its strategy if the guarantors responded. The Bank concedes the guarantors had no duty to respond to its letter. The guarantors did not waive any advantage, right, privilege, claim, or benefit by failing to respond to the Bank's letter. The guarantors had no duty to inform the Bank they would avail themselves of the defense of discharge by payment in full. The defense was clearly provided for in the guaranties. The district court properly concluded the guarantors did not waive any of their rights.

### B.

### Estoppel

[¶ 15] The Bank's estoppel argument is equally unconvincing. We

have set out the elements of an estoppel claim:

As to the person being estopped the elements are: 1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; 2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence the other party or persons; and 3) knowledge, actual or constructive, of the real facts. As to the person claiming estoppel the elements are: 1) lack of knowledge and the means of knowledge of the truth as to the facts in question; 2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and 3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Blocker Drilling Canada, Ltd. v. Conrad,* 354 N.W.2d 912, 920 (N.D.1984) (citing *Farmers Coop. Ass'n of Churchs Ferry v. Cole,* 239 N.W.2d 808, 809 (N.D.1976)).

[¶ 16] The district court determined the Bank "was fully aware of all of the circumstances and made the conscious choice to bid at the Sheriff's Sale." The district court concluded the Bank did not prove an estoppel claim because it did not lack knowledge of the truth as to the facts in question. The Bank does not assert any facts of which it was not aware. The guarantors did not inform the Bank of their intentions prior to the foreclosure sale, but the Bank was aware the guarantors maintained the defense of discharge by payment in full due to the plain language of the guaranties. In addition, the Bank concedes the guarantors had no duty to respond to its letter. By sending the letter, the Bank may have intended to induce a response from the guarantors if they disagreed with the Bank's position, but the Bank's intent in sending the letter does not turn the guarantors' failure to respond into inaction upon which the Bank could rely. The Bank did not change its position or status based on the guarantors' failure to respond. The Bank bid at the foreclosure sale just as it stated it would in the letter. The district court properly concluded the Bank did not prove an estoppel claim.

[¶ 17] We affirm the district court's judgment denying the Bank's motion for summary judgment, granting summary judgment for the guarantors, and dismissing the Bank's complaint.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.