Filed 10/23/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 219

Wenco, a North Dakota Limited Partnership, Plaintiff and Appellant

v.

EOG Resources, Inc., QEP Energy Company, 

John Doe Defendants 1-10, claiming any estate or interest 

in, or lien or encumbrance upon, the property described in 

numbered paragraph 29 of the complaint, Defendants

EOG Resources, Inc., QEP Energy Company, Appellees

No. 20120194

Appeal from the District Court of Mountrail County, Northwest Judicial District, the Honorable Todd L. Cresap, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

David J. Hogue, P.O. Box 1000, Minot, N.D. 58702-1000, for plaintiff and appellant.

Amy L. De Kok (argued), Lawrence Bender (on brief) and Jillian R. Rupnow (on brief), P.O. Box 1855, Bismarck, N.D. 58502-1855, for defendant and appellee EOG Resources, Inc.

John W. Morrison, Jr. (argued) and Wade Charles Mann (on brief), P.O. Box 2798, Bismarck, N.D. 58502-2798, for defendant and appellee QEP Energy Company.

Wenco v. EOG Resources, Inc.

No. 20120194

Kapsner, Justice.

[¶1] Wenco, a North Dakota limited partnership, appeals from a judgment quieting title to certain Mountrail County royalty and mineral interests in EOG Resources, Inc. (“EOG”), and QEP Energy Company (“QEP”), and dismissing Wenco’s claims for conversion and unjust enrichment against EOG and QEP.  We conclude the district court did not err in ruling as a matter of law that Wenco’s interest bears the entire burden of a prior royalty interest conveyance in the subject property, that EOG and QEP did not waive their rights to claim the prior royalty interest conveyance burdened only Wenco’s interest, and consequently, that Wenco had no viable claims against EOG and QEP for conversion and unjust enrichment.  We affirm.

I

[¶2] On November 30, 1954, Raymond and Jewell Dockter, who owned 100 percent of the oil and gas interests in a tract of land in Mountrail County, executed a royalty deed to Northwestern National Bank of Minneapolis conveying an undivided 64/160ths interest in “all of the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under” the subject property.  The deed was recorded the same day.  On March 4, 1957, the Dockters executed a mineral deed to Wm. F. Grinnan conveying an undivided one-half interest in “all of the oil, gas and other minerals in and under” the subject property.  The deed warranted title to the one-half interest and although it did not reference the earlier royalty conveyance to the Bank, the deed stated it was “made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed.”  This mineral deed was recorded on April 11, 1957.  QEP is the successor in interest to Grinnan, having received its interest following a series of earlier conveyances made by Grinnan.

[¶3] Wenco purchased the Dockters’ remaining interest in the property through a contract for deed in 1993.  On July 31, 2003, the Dockters executed a warranty deed to Wenco conveying their remaining interest in the property subject to “prior mineral reservations . . . now of record.”  This deed was recorded on August 5, 2003.  In 2006 Wenco leased its mineral interest to Context Energy Company and that lease was later assigned to EOG and the assignment was recorded on July 5, 2006.

[¶4] EOG decided to drill a well on the property and had a drilling title opinion prepared.  QEP agreed to participate and later signed a joint operating agreement.  After EOG’s request for a pooling order was granted by the Industrial Commission, a division order title opinion was prepared incorporating the drilling title opinion.  It assigned Wenco a 0.03335841 royalty interest and QEP a 0.24376880 royalty interest in the oil and gas produced from the spacing unit.  Neither Wenco nor QEP signed this division order.  QEP subsequently contacted EOG and questioned the interest it had been assigned in the well production.  QEP believed its interest had been improperly burdened by the royalty interest held by the Bank and its royalty interest should be increased, while Wenco’s royalty interest should be decreased.  After a reanalysis of the situation, a revised royalty interest opinion was prepared which reduced Wenco’s royalty interest to 0.02505015 and increased QEP’s royalty interest to 0.250000.  A revised division order conforming with the revised royalty interest opinion was issued in September 2008.

[¶5] EOG withheld payments from Wenco to recover the overpayment caused by its original miscalculation.  After the overpayments were recovered, EOG began making royalty payments to Wenco in accordance with the revised division order.  In March 2010, Wenco expressed its disagreement with the revised division order, contending both Wenco and QEP should be proportionately burdened by the Bank’s royalty interest.  EOG disagreed, and Wenco brought this action to quiet title against EOG and QEP.  Wenco claimed QEP had been unjustly enriched and that EOG had converted funds belonging to Wenco.

[¶6] The district court granted summary judgment in favor of EOG and QEP, ruling EOG was correctly dispersing royalty revenue in accordance with this Court’s opinion in 
Acoma Oil Corp. v. Wilson
, 471 N.W.2d 476 (N.D. 1991) (“
Acoma
”), and therefore, as a matter of law, EOG had not committed conversion and QEP had not been unjustly enriched.  The court further ruled that, as a matter of law, EOG and QEP had not waived their rights to assert that the royalty conveyance to the Bank burdened only Wenco’s interest.

II

[¶7] Wenco argues the district court erred in granting summary judgment in favor of EOG and QEP because the court misapplied the law relating to overconveyances of mineral interests.

[¶8] The standard for reviewing summary judgments is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

 

Arndt v. Maki
, 2012 ND 55, ¶ 10, 813 N.W.2d 564 (quoting 
Saltsman v. Sharp
, 2011 ND 172, ¶ 4, 803 N.W.2d 553).  

[¶9] Our analysis begins with a discussion of this Court’s decision in 
Acoma
, 471 N.W.2d 476.  In that case, H.O. Moen owned a 160-acre tract of land and in 1937 made three separate royalty conveyances cumulatively transferring to third parties a 6.5 percent royalty interest in all oil and gas produced from the land.  
Id.
 at 477.  In 1944 Moen and his wife conveyed the 160 acres to Clayton D. Wilson, Sr., by warranty deed without reserving any mineral interests or mentioning the prior 6.5 percent royalty conveyances.  
Id.
  In 1952 Wilson and his wife conveyed to Thomas W. Leach through two separate mineral deeds an undivided 35/320ths and an undivided 5/320ths interest in the minerals.  
Id.
  The deeds contained warranty clauses but did not indicate that the conveyed interest was burdened by the previously conveyed and outstanding 6.5 percent royalty.  
Id.
  

[¶10] Leach subsequently learned about the outstanding 6.5 percent royalty through a title opinion.  
Acoma
, 471 N.W.2d at 478.  Leach executed a mineral deed with a warranty clause to United Properties Incorporated conveying an undivided 18/320ths interest in the minerals.  In 1966 United conveyed that interest to Acoma through a mineral deed with a similar warranty clause.  
Id.
  Leach also conveyed through a warranty deed an undivided 9/320ths interest in the minerals to Clark D. Bassett.  
Id.
  These later deeds also did not refer to the outstanding 6.5 percent royalty.  
Id.
  Bassett later conveyed a 3/320ths interest in the minerals to Arthur Fitzloff.  
Id.
  Bassett’s remaining 6/320ths interest in the minerals was ultimately transferred to the Bassett Trust.  
Id.
  When the Wilsons died, their remaining interest in the property passed to their children.  
Id.
  

[¶11] After Universal Resources Corporation drilled a producing oil and gas well on the property, a dispute arose whether the burden of the outstanding 6.5 percent royalty should be shared proportionately by Acoma, the Bassett Trust, and the Wilson children, or entirely by the Wilson children.  
Acoma
, 471 N.W.2d at 478.  The district court ruled that the rationale of 
Duhig v. Peavy-Moore Lumber Co.
, 144 S.W.2d 878 (Tex. 1940), did not apply, but that principles of equitable estoppel governed.  
Acoma
, at 478-79.  The district court determined that, because Leach was aware of the outstanding 6.5 percent royalty, equity dictated that the 6.5 percent royalty be proportioned among the current mineral owners.  
Id.
 at 479.

[¶12] This Court reversed, resolving the issue by applying the 
Duhig
 rule, which holds “that a grantor cannot grant and reserve the same mineral interest, and if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation.”  
Acoma
, 471 N.W.2d at 480.  The Court relied in part on decisions from New Mexico and Texas, 
see
 
Atlantic Refining Co. v. Beach
, 436 P.2d 107 (N.M. 1968), and 
Selman v. Bristow
, 402 S.W.2d 520 (Tex. Ct. Civ. App. 1966), which had also used the 
Duhig
 rationale to conclude that conveyances of undivided fractional mineral interests in a tract of land were not proportionately burdened by prior royalty conveyances.  
Acoma
, at 482-84.  This Court concluded that, under the 
Duhig
 rule, the Wilson children bore the entire burden of the 6.5 percent royalty:

When the Wilson parents conveyed the mineral acres to Leach, they retained ownership of enough mineral interests in the 160-acre tract of land to satisfy the prior 6.5% royalty assignment without burdening the interest conveyed to Leach.  Because the Wilson parents owned enough mineral interests in the 160-acre tract of land to fully satisfy their conveyances to Leach, we conclude that the interests of Leach’s successors in interest, Acoma and the Bassett Trust, are not burdened by the 6.5% royalty. . . .  We therefore conclude that the trial court erred in determining that the 6.5% royalty should be proportionately shared by Acoma and Bassett.

 

Id.
 at 484.  

[¶13] The Court’s holding in 
Acoma
 is succinctly stated in North Dakota Mineral Title Standards 7-05 and 7-05.1 (1989):

If a mineral owner who owns a mineral interest subject to an outstanding royalty interest executes a mineral deed (with a warranty clause) to a party conveying mineral acres or “interests in oil, gas and other minerals in and under” without any reference to the outstanding royalty interest, the retained mineral interest of the mineral owner alone bears the outstanding royalty if the interest is large enough to satisfy the royalty interest.

 

[¶14] The district court recognized the factual similarities between this case and 
Acoma
 and reasoned:

The Dockters owned one-hundred percent of the minerals in the Subject Property prior to making any conveyances. . . . The first conveyance consisted of a sixty-four/one hundred sixtieths (64/160ths) royalty interest in the Subject Property being granted to the Bank. . . . The second conveyance sold, without any mention of the prior conveyance to the Bank, an undivided one-half interest in the minerals of the Subject Property to Grinnan, transferring the accompanying eighty/one hundred sixtieths (80/160ths) royalty interest. . . . Accordingly, after this conveyance, the Dockters retained an undivided one-half interest in the minerals plus the royalty interest that attached to such, an eighty/one hundred sixtieths (80/160ths), a royalty interest large enough to satisfy the royalty interest previously conveyed to the Bank.  This leaves the Dockters’ royalty interest as a sixteen/one hundred sixtieths (16/160ths) after reduction for the Bank’s interest.

As a result of the similar factual scenarios, the Dockters will be treated like the Wilsons, meaning that the prior royalty conveyance does not burden the subsequent conveyance under the mineral deed.

 

Consequently, the court held that Wenco, which received the remaining mineral interest of the Dockters, bore the entire burden of the Bank’s royalty interest, and the interest held by QEP, successor in interest to Grinnan, was unencumbered by the Bank’s royalty interest.

[¶15] Wenco argues 
Acoma
 is distinguishable based on the factors set forth in Justice VandeWalle’s specially concurring opinion in that case.  
See
 471 N.W.2d at 486-87 (VandeWalle, J., concurring specially).  We need not analyze those factors as applied to this case because the specially concurring opinion did not pronounce the decision in 
Acoma
.  Decisions are pronounced by a majority of the Supreme Court.  
See
 N.D. Const. art. VI, § 4; 
Basin Elec. Power Coop. v. North Dakota Workers Comp. Bureau
, 541 N.W.2d 685, 688 (N.D. 1996). 

[¶16] Wenco argues that 
Acoma
 should be overruled “to the extent it treats royalty interests as though they are the legal equivalent of full mineral interests.”  We decline to do so for two reasons.  First, we
 might agree that 
Acoma
 should be overruled if it were an aberration in the law.  It is not.  
Acoma
 is supported by decisions in two other jurisdictions, and Wenco points to no cases from other jurisdictions that have held to the contrary under these circumstances.  Second, and foremost, 
Acoma
 has been the law in North Dakota for more than 20 years and its holding is embodied in the North Dakota Mineral Title Standards.  “The rule of stare decisis is grounded upon the theory that when a legal principle is accepted and established rights may accrue under it, security and certainty require that the principle be recognized and followed thereafter.”  
Dickie v. Farmers Union Oil Co.
, 2000 ND 111, ¶ 13, 611 N.W.2d 168.  That rule is especially applicable here.  
As evidenced by this case, rights have accrued under 
Acoma
, and certainty and security in already existing division orders and title opinions overwhelmingly militate against overruling its holding.

[¶17] We conclude the district court correctly ruled 
Acoma
 controls this case and that Wenco’s interest bears the entire burden of the Bank’s royalty interest.

III

[¶18] Wenco argues summary judgment was nevertheless improperly granted because there are genuine issues of material fact whether EOG and QEP waived their rights to assert that the outstanding royalty conveyance to the Bank burdened only Wenco’s interest.  The district court ruled Wenco lacked standing to assert waiver against QEP, but ruled in the alternative that, as a matter of law, neither EOG nor QEP waived their ability to question the proper application of the Bank’s outstanding royalty interest.  It is unnecessary to address the court’s standing ruling because we agree that Wenco has failed to establish valid waivers as a matter of law.

[¶19] A person may waive rights and privileges to which that person is legally entitled.  
Lawrence v. Delkamp
, 2006 ND 257, ¶ 8, 725 N.W.2d 211.  For a waiver to be effective, it must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit.  
First Int’l Bank & Trust v. Peterson
, 2009 ND 207, ¶ 13, 776 N.W.2d 543.  Waiver may be established either by an express agreement or by inference from acts or conduct.  
Estate of Harms
, 2012 ND 62, ¶ 8, 814 N.W.2d 783.  Although the existence or absence of waiver is generally a question of fact, the issue becomes a question of law if reasonable persons could draw only one conclusion from the circumstances.  
Sanders v. Gravel Prods., Inc.
, 2008 ND 161, ¶ 10, 755 N.W.2d 826.

[¶20] Although Wenco on appeal generally claims EOG voluntarily waived its right, Wenco has failed to flesh out any actions by EOG that constitute a waiver.  The district court interpreted Wenco’s argument to be that EOG waived its ability to change its division orders.  We agree with the court’s reasons for rejecting this claim:

Wenco’s general waiver argument cannot succeed because it is inappropriate to classify EOG’s behavior as a waiver.  As previously described, a waiver involves the relinquishment of a type of advantage or right.  Under the facts of this case, regardless of who received what percentage under the division orders, EOG was required, under the terms of the lease, to pay a one-sixth (1/6th) royalty percentage to the lessors of the Subject Property.  “Division orders . . . do not rewrite or supplant oil and gas lease contracts.”  
Yzaguirre [v. KCS Res., Inc.
, 47 S.W.3d 532, 539 (Tex. Ct. App. 2000)].  Thus, EOG’s overall obligation would have remained the same had it initially issued correct division orders rather than incorrect ones, and there were no advantages or rights abandoned by EOG in taking action to revise the division orders.  Waiver was not committed by EOG.

 

Wenco’s waiver argument against EOG is without merit.

[¶21] Wenco’s argument that QEP waived its right to assert the royalty conveyance to the Bank burdened only Wenco’s interest is based on QEP’s actions in 2007 which led to its signing of the joint operating agreement to participate in the well.  On April 4, 2007, QEP agreed to participate in the well “subject to review and approval of a Title Opinion covering the established temporary spacing unit and approval of a mutually acceptable Joint Operating Agreement.”  EOG provided to QEP the drilling title opinion which stated the interests of Wenco and QEP “are subject to a severed landowner royalty interest vested of record in Northwestern National Bank of Minneapolis.”  After a review of the drilling title opinion, QEP signed the joint operating agreement to participate in the well on May 4, 2007.

[¶22] Although the drilling title opinion informed QEP that its interest was subject to the severed landowner royalty interest, the same section of the drilling title opinion warned that “[i]n the event of production, all issues related to this royalty must be determined and considered.”  Furthermore, the drilling title opinion properly reflected that both QEP’s working interest and net revenue interest in the subject property was 50.000000 percent and in the spacing unit was 25.000000 percent, without indicating that the net revenue interest was subject to any potential royalty burden.  When QEP received the division order burdening QEP’s interest with a portion of the outstanding royalty, QEP promptly requested that EOG correct its interest to reflect the interest shown in the title opinion.  These circumstances do not raise a genuine issue of material fact that QEP voluntarily and intentionally waived the right to receive the interest to which it was lawfully entitled.

[¶23] We conclude the district court did not err in ruling as a matter of law that EOG and QEP did not waive their rights.  It follows that the court correctly dismissed Wenco’s claims of conversion and unjust enrichment against EOG and QEP.

IV

[¶24] We do not address other arguments raised because they are unnecessary to the decision or are without merit.  The judgment is affirmed.

[¶25] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

VandeWalle, Chief Justice, concurring in the result.

[¶26] 
I concur in the result reached by the majority opinion.  I agree that my concurring opinion in 
Acoma Oil Corp. v. Wilson
, 471 N.W.2d 476, 486-87 (N.D. 1991) does not announce the law of the case.  In 
Acoma
 I suggested that under a different set of facts the result might be different.  While I believe that suggestion had merit, I was alone in that position.  Significantly, for my purposes, that decision was issued some 21 years ago.  The North Dakota Mineral Title Standards, quoted in ¶ 13 of the majority opinion, were understandably not altered to reflect my position.  While those standards are not binding on this Court, I recognize that as a practical matter most real property lawyers rely on those standards and that stability in real property titles, including title to minerals, is a significant if not controlling consideration in these matters.  Presumably Wenco, the purchaser of the Dockters’ remaining interests in 1993, and Wenco’s subsequent lessees were aware of the 1991 decision in 
Acoma
 and the Mineral Standards.   

[¶27] Gerald W. VandeWalle, C.J.